1

```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION


 3


 4     REGINALD CARROLL,


 5
                   PLAINTIFF,
 6                                      DOCKET NO. 1:14-CV-00747-ELR
                   -VS-
 7


 8     ATA RETAIL SERVICES, INC.,


 9
                   DEFENDANT.
10


11
                 TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS
12                 BEFORE THE HONORABLE ELEANOR L. ROSS
                        UNITED STATES DISTRICT JUDGE
13                         OCTOBER 24, 2016


14


15


16

       APPEARANCES:
17
       ON BEHALF OF THE PLAINTIFF:
18
              REGINA SLEDGE MOLDEN, ATTORNEY AT LAW
19
       ON BEHALF OF THE DEFENDANT:
20
              MARI LYNN MYER, ATTORNEY AT LAW
21


22


23

       ELIZABETH G. COHN, RMR, CRR
24     OFFICIAL COURT REPORTER
       UNITED STATES DISTRICT COURT
25     ATLANTA, GEORGIA
```

1          (ATLANTA, GEORGIA; OCTOBER 24, 2016, AT 10:09 A.M. IN

2     OPEN COURT.)

3          THE COURT:  OKAY.  I NOW CALL THE CASE OF REGINALD

4     CARROLL, AS PLAINTIFF, VERSUS ATA RETAIL SERVICES, INC. AND

5     DONNA HART, WHO, OF COURSE, IS NOT PART OF THIS RIGHT NOW

6     BECAUSE SHE'S NOT BEEN SERVED, BUT SHE WAS A LISTED DEFENDANT.

7     THIS IS CIVIL ACTION 14-CV-747.

8          WE ARE HERE FOR A PRETRIAL CONFERENCE AT MY REQUEST

9     IN ANTICIPATION FOR TRIAL THAT IS SCHEDULED TO BEGIN TUESDAY,

10    NOVEMBER 1ST, 2016, AT 9:30.

11         IF I COULD GET THE ATTORNEYS TO ANNOUNCE YOUR

12    APPEARANCE FOR THE RECORD, BEGINNING WITH PLAINTIFF'S COUNSEL.

13         AND I'M GOING TO GRAB AN EXTRA PAD AS YOU'RE DOING

14    THAT.

15         MS. MOLDEN:  THANK YOU, YOUR HONOR.  REGINA MOLDEN

16    HERE ON BEHALF OF PLAINTIFF, REGINALD CARROLL.

17         MS. MYER:  MARI MYER HERE ON BEHALF OF DEFENDANT, ATA

18    RETAIL SERVICES, INC.

19         THE COURT:  ALL RIGHT.  AND TELL ME, FIRST, IF YOU

20    TWO WILL BE THE LEAD ATTORNEYS TRYING THE CASE, AND ALSO ANY

21    OTHER ATTORNEYS THAT WILL BE WITH YOU, AS WELL AS ANYONE WHO

22    WILL BE WITH YOU AT COUNSEL TABLE, PARALEGAL OR OTHERWISE, SO

23    THAT I WILL KNOW AND WILL BE ABLE TO INTRODUCE THEM TO THE

24    JURY.

25         MS. MOLDEN:  OKAY, YOUR HONOR.  YES, I WILL BE LEAD

3

1    COUNSEL.  AND I WILL HAVE JESSICA -- I'LL ANTICIPATE HAVING

2    JESSICA TIAN AND ROB SHAPIRO WITH ME AT COUNSEL'S TABLE.

3              THE COURT:  OKAY.

4              MS. MYER:  YOUR HONOR, I WILL BE THE SOLE DEFENSE

5    COUNSEL.  I WILL HAVE WITH ME THE COMPANY'S CFO, JEROEN

6    NOORDERMEER.  AND I WOULD BE HAPPY TO SPELL THAT.

7              THE COURT:  THANK YOU.  I SHOULDN'T EVEN HAVE TO ASK

8    HOW YOU KNEW.

9              MS. MYER:  HE'S DUTCH.

10             THE COURT:  OH, IT'S A HE.  YOU SAID GERALYN?

11             MS. MYER:  JEROEN.  I THINK IT'S ALMOST PRONOUNCED

12   HEROIN.  BUT J-E-R-O-E-N IS THE FIRST NAME.  THE LAST NAME IS

13   NOORDERMEER, N-O-O-R-D-E-R-M-E-E-R.

14             THE COURT:  OKAY.  ALL RIGHT.

15             AND, MS. MOLDEN, YOU WILL NOT HAVE ATTORNEY BROWN

16   WITH YOU?

17             MS. MOLDEN:  NO.  I THINK -- BECAUSE WE ONLY HAVE ONE

18   WITNESS, AND SO IT WILL JUST BE ME.

19             THE COURT:  IS THAT THE SAME AS TILLERY?

20             MS. MOLDEN:  IT IS TILLERY BROWN.

21             THE COURT:  OKAY.  GOTCHA.  OKAY.  NO, IT JUST THREW

22   ME OFF FOR A MINUTE.  ALL RIGHT.  BUT PROBABLY WON'T BE HERE

23   FOR THIS ONE.

24             OKAY.  LET ME JUST ASK, TOO, HOW CLOSE WE GOT IN

25   MEDIATION.  IF YOU ALL COULD JUST SHED A LITTLE LIGHT ON WHAT

4

1   HAPPENED IN MEDIATION SO THAT WE'LL UNDERSTAND.

2         AND WE'LL START WITH YOU, MS. MOLDEN.

3         MS. MOLDEN:  WELL, I TYPICALLY, FOR MEDIATIONS, I

4   THINK THAT THE LAWYERS HAVE TO WORK REALLY HARD FIRST BEFORE

5   YOU GO TO MEDIATION BECAUSE THE MEDIATOR CAN ONLY DO SO MUCH.

6   SO I TYPICALLY REQUEST THAT DEFENDANTS PUT MONEY ON THE TABLE

7   SO THAT I KNOW THAT WE'RE ENGAGING IN GOOD-FAITH SETTLEMENT

8   DISCUSSIONS.

9         AND SO DEFENDANTS DID THAT.  AND WE AGREED ON A

10  MEDIATOR.  AND -- BUT WHEN WE GOT TO THE MEDIATION, MY

11  UNDERSTANDING WAS THAT -- AND, AGAIN, WHEN I ASKED THEM TO PUT

12  MONEY ON THE TABLE, IT'S A GOOD-FAITH NUMBER TO GET THE

13  MEDIATION STARTED.

14        WHAT I GATHERED DURING MEDIATION, PROBABLY IN LESS

15  THAN AN HOUR, WAS THAT DEFENDANTS WERE PROBABLY PREPARED TO GO

16  A THOUSAND DOLLARS HIGHER THAN THE GOOD-FAITH OFFER, AND SO IT

17  JUST DIDN'T GO ANYWHERE.

18        THE COURT:  ALL RIGHT.  ANYTHING THAT YOU WANT TO

19  ADD, MS. MYER?

20        MS. MYER:  YOUR HONOR, WE MADE WHAT WE FELT WAS A

21  GOOD-FAITH OFFER.  I THINK WE'RE SIMPLY VERY FAR APART IN OUR

22  PERCEPTIONS OF WHAT THE JURY IS LIKELY TO DO.

23        THE COURT:  ARE YOU ALL WILLING TO TELL ME WHERE YOU

24  ARE, WHERE YOU LAST WERE WHEN YOU TALKED IN TERMS OF DOLLAR

25  AMOUNTS?

5

1          MS. MYER: WE'RE WILLING TO SAY.

2          THE COURT: YES.

3          MS. MYER: YES. SO FOR THE DEFENSE, WE PUT TWO

4     NUMBERS ON THE TABLE, ONE FOR MR. CARROLL AND ONE FOR

5     ATTORNEY'S FEES. FOR MR. CARROLL, THE OFFER WAS 6500, AND

6     THAT'S BASED ON A PERCEPTION OF HIS CREDIBILITY. AND FOR

7     ATTORNEY'S FEES, WE OFFERED 25,000.

8          THE COURT: ALL RIGHT.

9          MS. MYER: AND THAT'S BASED ON THE FACT THAT THERE'S

10    NOT BEEN A WHOLE LOT OF EXTENSIVE AND EXPENSIVE DISCOVERY, ET

11    CETERA.

12         THE COURT: ALL RIGHT. MS. MOLDEN, ANYTHING ELSE YOU

13    WANT TO ADD IN TERMS OF WHAT YOU WERE SEEKING AS REASONABLE?

14         MS. MOLDEN: I THINK WE WERE AT -- I DON'T REMEMBER.

15    IT WAS LIKE 100 AND SOME -- IT WASN'T EVEN $200,000. AND SO I

16    THINK THAT WE WERE INCREDIBLY REASONABLE IN TERMS OF -- AGAIN,

17    AS MS. MYER SAID, WE JUST, BY THE TIME YOU GET TO THIS POINT

18    THREE YEARS LATER, SO ON AND SO FORTH.

19         AND, YOU KNOW, I VIEW THE CASE VERY DIFFERENT. I

20    THINK THAT THEY HAVE A LOT OF EXPOSURE. THEY THINK $6,000 IS

21    ALL HE'S ENTITLED TO. AND SO WE JUST -- THERE JUST WASN'T MUCH

22    TO TALK ABOUT.

23         THE COURT: OKAY. AND YOU SAID UNDER 200,000.

24         MS. MOLDEN: YEAH.

25         THE COURT: IS WHAT YOU SAID?

6

1          MS. MOLDEN:  WE WERE WILLING TO GO -- HE WAS WILLING

2    TO TAKE DEFINITELY UNDER 200,000, MAYBE MORE AROUND 150 IS WHAT

3    HE WAS --

4          THE COURT:  JUST FOR HIM, OR WE INCLUDING ATTORNEY'S

5    FEES, OR WHAT ARE WE TALKING ABOUT?

6          MS. MOLDEN:  NO.  WE WERE WILLING TO SETTLE AT THAT

7    POINT FOR LESS THAN 200.

8          THE COURT:  OKAY.  ALL RIGHT.  AND -- OH, WE'RE GOING

9    TO TALK ABOUT THE MOTION IN LIMINE IN A SECOND.  BUT I DID

10   NOTICE WHEN I READ IT THAT, MS. MYER, YOU HAD AN INDICATION IN

11   THERE THAT YOU HAD BEEN UNABLE TO SECURE THE TRANSCRIPT OF OUR

12   MAY 9TH SPOLIATION HEARING.  AND I WANTED TO CHECK THE STATUS

13   ON THAT.

14          DID YOU REQUEST IT AND WE DIDN'T --

15          MS. MYER:  I REQUESTED IT.  AND MY ASSUMPTION AND

16   EXPECTATION IS THAT I'LL HAVE IT THIS WEEK?

17          THE COURT REPORTER:  TODAY.

18          MS. MYER:  ALL RIGHT.  WELL, PERFECT.  SO, BUT,

19   UNFORTUNATELY, THAT MEANT THAT I DIDN'T HAVE QUOTES FROM THE

20   TRANSCRIPT TO BE ABLE TO USE IN CONNECTION WITH MY MOTION.  AND

21   I APOLOGIZE.  I APPARENTLY WAITED TOO LATE TO ORDER THE

22   TRANSCRIPT.

23          THE COURT:  OKAY.  NO PROBLEM.  BUT YOU WILL STILL

24   HAVE IT IN TIME IN CASE YOU NEED IT FOR IMPEACHMENT PURPOSES?

25   IS THAT WHAT YOU'RE SEEKING IT FOR?

                                                        7

1              MS. MYER:  YES.  YES, YOUR HONOR.

2              THE COURT:  OKAY.  GOT IT.  ALL RIGHT.

3              AND IN TERMS OF TRIAL LENGTH, MS. MOLDEN, YOU HAD

4    INDICATED YOUR ESTIMATION WAS TWO DAYS.

5              MS. MYER, YOU SAID ABOUT ONE DAY.  SO WE ARE THINKING

6    A TOTAL OF THREE DAYS.  AND WE ARE STARTING ON A TUESDAY, SO

7    THAT GIVES US, I MEAN, A FULL WEEK.  AND, OF COURSE, IF

8    SOMETHING HAPPENS AND WE'VE GOT TO GO OVER INTO ANOTHER WEEK,

9    THAT'S FINE.  BUT WE HAVE ALLOTTED FOR FOUR DAYS IN THAT WEEK.

10             IS THAT STILL YOUR BEST ESTIMATE, MS. MOLDEN?

11             MS. MOLDEN:  AND I WILL SAY YES, YOUR HONOR.  I'LL

12   SAY THAT, IF THAT MUCH.  LIKE I SAID, WE HAVE ONE WITNESS.  AND

13   I'M THINKING ABOUT STRIKING A JURY AND EVERYTHING THAT GOES

14   WITH IT.  SO I THINK A DAY AND A HALF AT BEST FOR US.

15             THE COURT:  AND WHEN YOU SAY ONE WITNESS, I TAKE IT

16   THAT'S MR. CARROLL.

17             MS. MOLDEN:  THAT IS CORRECT.

18             THE COURT:  SO YOU WOULD BE READY TO GO RIGHT AFTER

19   WE PICK A JURY.

20             MS. MOLDEN:  ABSOLUTELY.

21             THE COURT:  OKAY.  MS. MYER, IS THAT STILL AN

22   ACCURATE ESTIMATION FOR YOU, ABOUT ONE DAY OR SO?

23             MS. MYER:  YES, YOUR HONOR.  AND I, I HAVE A HARD

24   TIME IMAGINING THIS -- THE WHOLE TRIAL TAKING EVEN TWO FULL

25   DAYS.

8

1          THE COURT: OKAY.

2          MS. MOLDEN: I AGREE.

3          THE COURT: ALL RIGHT. NOT ANTICIPATING MS. HART

4  RIGHT NOW? I KNOW ANYTHING COULD HAPPEN. BUT YOUR BEST GUESS

5  RIGHT NOW?

6          MS. MYER: WE WOULD LIKE TO HAVE HER. I HAVE NO

7  CERTAINTY AS WE SIT HERE TODAY THAT THAT WILL HAPPEN. BUT SHE

8  IS ON OUR MAY-CALL LIST BECAUSE --

9          THE COURT: OKAY.

10          MS. MYER: -- IT'S STILL A POSSIBILITY.

11          THE COURT: MS. DOTY YOU DO PLAN TO CALL?

12          MS. MYER: YES, WE DO.

13          THE COURT: ALL RIGHT. AND TELL ME WHO MELISSA TERRY

14  IS.

15          MS. MYER: MELISSA TERRY IS -- WELL, LET ME BACK UP.

16  MS. DOTY WAS DONNA HART'S SUPERVISOR. MELISSA TERRY IS ONE

17  LEVEL UP, SO SHE WAS MS. DOTY'S SUPERVISOR.

18          THE COURT: ALL RIGHT. LET'S GO AHEAD AND TALK ABOUT

19  THE VERDICT FORM. AND I KNOW WE HAD SOME ISSUES HERE. WE WERE

20  SCRATCHING OUR HEADS TRYING TO FIGURE OUT IF WE HAD MISSED

21  SOMETHING.

22          ALL RIGHT. SO HERE IS WHERE WE ARE RIGHT NOW. AND

23  IF YOU ALL WOULD TAKE A FEW SECONDS TO LOOK OVER THAT, AND THEN

24  WE'LL GO AHEAD AND DISCUSS IT.

25          MS. MYER: YOUR HONOR, I HAVE A COUPLE OF COMMENTS ON

1  THIS.

2          THE COURT:  YES, MA'AM.  OKAY.

3          MS. MYER:  I SEE THAT THE COURT IS INCLINED TO NOT DO

4  A GENERAL VERDICT FORM.  AND I UNDERSTAND THAT.

5          THE COURT:  WHAT DO YOU MEAN GENERAL?  HOW GENERAL?

6          MS. MYER:  I HAD ASKED FOR A GENERAL VERDICT, JUST,

7  WE FIND IN FAVOR OF THE PLAINTIFF AND AWARD X AMOUNT; OR WE

8  FIND IN FAVOR OF THE DEFENDANT WITHOUT A BREAKDOWN.

9          AND I UNDERSTAND THAT COURTS GENERALLY DON'T DO THAT,

10  BUT I FIGURED IT WAS WORTH ASKING, SO I UNDERSTAND THAT.

11          BUT THERE WERE TWO OTHER MATTERS THAT I WANTED TO

12  BRING TO THE COURT'S ATTENTION WITH RESPECT TO THIS PARTICULAR

13  FORM.  ONE IS THAT, BECAUSE MR. CARROLL HAS ADMITTED THAT HE

14  WAS PAID FOR SOME TIME THAT HE DID NOT WORK, WE BELIEVE THAT

15  THERE -- IT WOULD BE APPROPRIATE TO REQUIRE OR TO ASK THE JURY

16  TO SET OFF AGAINST THE FLSA AWARD IF THERE IS AN FLSA AWARD.

17          SO WE DIDN'T FILE A COUNTERCLAIM.  SO I UNDERSTAND WE

18  WOULD NOT BE ENTITLED TO A DIRECT AWARD, BUT THAT A SETOFF I

19  THINK WE WOULD BE ENTITLED TO.

20          AND THE SECOND THING IS, WITH RESPECT TO PUNITIVE

21  DAMAGES, I BELIEVE THAT IT WOULD BE APPROPRIATE TO INSTRUCT THE

22  JURY, FOLLOWING QUESTION TWO, THAT IF THEY HAVE FOUND IN FAVOR

23  OF THE DEFENDANT AS TO QUESTIONS ONE AND TWO, THAT THEY STOP

24  THERE, RATHER THAN GOING ON TO PUNITIVE DAMAGES, WHICH IS

25  QUESTION THREE.

10

1          THE COURT:  AND DON'T THE PUNITIVE DAMAGES ONLY GO TO

2     THE SEXUAL HARASSMENT, NOT TO THE FLSA?

3          MS. MYER:  YES, YOUR HONOR.  SO THEY WOULD ONLY

4     ACTUALLY GO TO QUESTION ONE, YES.

5          THE COURT:  OKAY.  LET ME ADDRESS EACH OF THOSE.

6          FIRST OF ALL, WITH RESPECT TO THE GENERAL VERDICT,

7     YEAH, WE DID LEAVE IT DEFINITELY MORE GENERAL THAN WE NORMALLY

8     DO IN THIS COURT.  BUT I DO THINK THAT FOR DIFFERENT COUNTS

9     THAT DON'T MERGE AND ARE INDEPENDENT, WE HAVE TO -- AT LEAST I

10    FEEL MORE COMFORTABLE BREAKING IT DOWN AT LEAST BY THE

11    DIFFERENT COUNTS.  SO THAT WAS MY REASON FOR DOING THAT.

12         BUT I DO REMEMBER THAT, IN YOUR E-MAIL, I THINK, YOU

13    DID REQUEST MORE GENERAL.  SO THIS IS HOW WE WILL PROCEED

14    THERE.

15         IN TERMS OF A SETOFF, LET ME HEAR FROM YOU FIRST, MS.

16    MOLDEN.

17         MS. MOLDEN:  OH, I THINK THAT IT'S PERFECTLY OKAY.

18    IN FACT, WE WILL BRING IT UP TO THE JURY THAT HE RECEIVED

19    ROUGHLY $125 FOR HOURS THAT MS. HART PUT IN FOR HIM WHEN HE

20    WASN'T THERE.  BUT I DON'T THINK THAT THAT NEEDS TO BE

21    EXPRESSED IN THE VERDICT FORM.  THERE'S NO CLAIM, NO

22    COUNTERCLAIM, AS MS. MYER HAS MENTIONED.  SO THERE SHOULD BE --

23    I DON'T THINK THAT IT'S PROPER TO HAVE THIS IN THE VERDICT

24    FORM.

25         WE CAN TALK ABOUT THAT DURING THE TRIAL.  AND THE

11

1    JURY WILL AWARD WHATEVER THEY AWARD, YOU KNOW, GIVEN THE FACTS

2    THAT WE GIVE THEM.  BUT I DON'T THINK IT SHOULD BE IN THE

3    VERDICT FORM.

4            THE COURT:  ALL RIGHT.  I CAN SEE IT EITHER WAY.

5            MS. MYER, IF YOU WANT TO SUBMIT SOMETHING FOR US TO

6    CONSIDER, I'M NOT GOING TO TRY TO CHANGE WHAT WE'VE PROPOSED

7    HERE, BUT IF YOU WANT TO SUBMIT SOMETHING, I'LL DEFINITELY

8    CONSIDER IT.  BUT I DO THINK THIS IS SUFFICIENT AND THAT THAT

9    CAN BE ARGUED IN TERMS OF THE SETOFF, ANY SETOFF THAT THEY

10   MIGHT AWARD.

11           I DON'T KNOW THAT IT HAS TO BE REFLECTED IN THIS

12   VERDICT FORM.  BUT, AGAIN, CERTAINLY, IF YOU WANT TO SUBMIT

13   SOMETHING TO THE COURT, WE'LL CONSIDER IT AND DISCUSS IT FIRST

14   DAY OF TRIAL.

15           IN TERMS OF THE PUNITIVE DAMAGES, LET'S SEE, I AGREE

16   WITH YOU.

17           WELL, LET ME HEAR FROM YOU FIRST, MS. MOLDEN.  BUT MY

18   INCLINATION IS THAT THIS DOES NEED TO BE MORE CLEAR IN TERMS OF

19   WHETHER WE GO TO PUNITIVE DAMAGES AND WHETHER THEY EVEN

20   CONSIDER THEM.  AND IF THEY DO, THAT THEY ARE ONLY TO BE

21   CONSIDERED WITH RESPECT TO QUESTION ONE.

22           BUT LET ME HEAR FROM YOU.

23           MS. MOLDEN:  WELL, I THINK THAT PROBABLY THE WAY TO

24   CURE THAT IS TO JUST MOVE THAT UP TO BE A PART OF NUMBER ONE.

25   AND IF YOU FOUND FOR PLAINTIFF ON SEXUAL HARASSMENT AND SEXUAL

12

1    HARASSMENT CLAIM, THE PLAINTIFF IS ENTITLED TO PUNITIVE

2    DAMAGES.  WE, THE JURY, AWARD PUNITIVE DAMAGES, HOWEVER WE

3    PHRASE.

4            BUT I THINK THAT IF WE JUST MOVE THAT UP TO NUMBER

5    ONE -- SO, IN OTHER WORDS, I DON'T TAKE ISSUE WITH MS. MYER'S

6    POINT, JUST A QUESTION OF FIGURING OUT HOW TO CURE IT.

7            THE COURT:  YEAH.  I WOULD MOVE IT UP.  I AM

8    ACCUSTOMED TO PUNITIVES BEING AT THE END.  SO EVEN SOME -- ANY

9    INDICATION SAYING, IF YOU FOUND ON ONE -- I DON'T KNOW HOW WE

10   WOULD WORD IT TO STILL CONSIDER TWO, BUT THEN CONSIDER THREE

11   ONLY AFTER THE -- I'M NOT SURE HOW WE WOULD DO IT.  BUT I DON'T

12   KNOW THAT I FEEL COMFORTABLE INSERTING PUNITIVES BETWEEN THE

13   TWO DIFFERENT COUNTS.

14           LET ME HEAR YOU ON THAT, MS. MYER.

15           MS. MYER:  I AGREE THAT IT WOULD BE INAPPROPRIATE TO

16   PUT PUNITIVES IN THE MIDDLE OF THE COUNTS.

17           THE COURT:  YEAH.

18           MS. MYER:  ONE IDEA THAT JUST OCCURRED TO ME IS

19   PERHAPS TO MOVE THE FLSA CLAIM UP AS NUMBER ONE AND THEN MAKE

20   THE SEXUAL HARASSMENT CLAIM NUMBER TWO, WHICH THEN WOULD ROLL

21   RIGHT INTO PUNITIVES IF THE JURY HAS FOUND IN FAVOR OF, OF HIM

22   ON THE SEXUAL HARASSMENT CLAIM.

23           THE COURT:  MS. MOLDEN, WHAT DO YOU SAY ABOUT THAT?

24           MS. MOLDEN:  I THINK THAT'S FINE.

25           THE COURT:  OKAY.  ALL RIGHT.  WE WILL DO THAT.

1    WE'LL FLIP ONE AND TWO.

2              MS. MOLDEN:  MAYBE WE JUST, WITH, WE, THE JURY, FIND

3    THAT PLAINTIFF -- MAYBE WITH RESPECT TO PLAINTIFF'S CLAIM OF

4    SEXUAL HARASSMENT, WE, THE JURY, FIND THAT PLAINTIFF IS

5    ENTITLED TO PUNITIVE DAMAGES, YES OR NO, AND THEN THE AMOUNT.

6              THE COURT:  ALL RIGHT.  WE WILL GO AHEAD -- AND I

7    ANNOUNCED SOME THINGS ON THIS.  AND I WILL SEND IT TO YOU

8    BEFORE WE GET TO TRIAL SO THAT YOU WILL HAVE AN OPPORTUNITY BY

9    E-MAIL TO GIVE US SOME FEEDBACK.  AND IF THERE'S ANYTHING THAT

10   STILL IS OUTSTANDING, WE'LL DEFINITELY HANDLE IT FIRST DAY OF

11   TRIAL.  BUT I'LL HAVE SOMETHING FOR YOU BEFORE THEN.

12             MS. MOLDEN:  OKAY.

13             THE COURT:  OKAY.  I'VE ALREADY PRETTY MUCH GONE OVER

14   YOUR TENTATIVE ORDERS OF PROOF.  FOR CHARGES, YOU DO NEED TO

15   SUBMIT PROPOSED CHARGES IN WORD VERSION BY 9:30 ON THURSDAY,

16   AND THAT'S THIS WEEK.  SO WE DO LIKE TO GET THOSE BEFOREHAND.

17   SO THIS THURSDAY BY 9:30.

18             IN ADDITION TO ANY CONCLUDING CHARGES THAT ARE GIVEN

19   TO THE JURY BEFORE DELIBERATIONS, I DO GIVE PRELIMINARY

20   INSTRUCTIONS.  SO LET ME GIVE YOU EACH A COPY OF THOSE.

21             AND EXCUSE ME FOR REACHING OVER YOU.

22             THE WAY THAT WE WILL DO OUR CHARGE CONFERENCE AT THE

23   END IS THAT WE WILL HAVE ALREADY BEGUN TO LOOK AT YOUR PROPOSED

24   CONCLUDING CHARGES.  WHEN WE FINISH THE PRESENTATION OF

25   EVIDENCE, YOU ALL WILL MEET INFORMALLY WITH JESSICA TO GO OVER

14

1    THE -- WHAT THE COURT HAS PUT TOGETHER FROM YOUR TWO PROPOSED

2    CHARGES.

3              YOU'LL JUST KIND OF SIT DOWN WITH HER AND TELL HER

4    WHAT ISSUES OR CONCERNS YOU HAVE, AND THEN WE'LL GO ON THE

5    RECORD IN TERMS OF ANY, ANY OBJECTIONS YOU WANT TO PLACE ON THE

6    RECORD.  WE JUST FIND THAT DOING IT THAT WAY IN AN INFORMAL

7    CONFERENCE, FIRST, SPEEDS THINGS UP SO THAT WE'RE PRETTY MUCH

8    ON THE SAME PAGE WITH JUST A COUPLE OF OUTSTANDING OBJECTIONS

9    AND ISSUES TO TAKE UP WHEN I COME OUT ON THE BENCH, SO YOU'LL

10   HAVE TIME TO DO THAT.

11             BUT, AGAIN, IF YOU COULD GET THOSE IN WORD VERSION TO

12   US BY THIS THURSDAY AT 9:30.

13             ALL RIGHT.  ALSO, AT THE BEGINNING OF THE JURY

14   SELECTION PROCESS, WE READ -- I WILL READ A PROPOSED FACTUAL

15   BASIS.  THIS IS NOT INTENDED TO INCLUDE EVERYTHING ABOUT THE

16   CASE.  AND YOU'LL SEE FROM THE LENGTH THAT IT DEFINITELY COULD

17   NOT.  BUT THIS IS JUST TO PUT THINGS IN CONTEXT FOR THE JURORS,

18   BECAUSE, OF COURSE, THEY WILL BE ASKED DURING JURY SELECTION

19   WHETHER THEY HAVE KNOWLEDGE OF THIS CASE.

20             AND SO I'D LIKE YOU TO LOOK OVER THAT FOR A SECOND

21   AND LET ME KNOW IF YOU HAVE ANY ISSUES WITH THAT.

22             MS. MOLDEN, YOU STILL READING?

23             MS. MOLDEN:  OH, I'VE READ IT.

24             THE COURT:  OKAY.  MS. MYER, I SAW YOU LOOK UP FIRST.

25   SO DO YOU WANT TO --

15

1          MS. MYER:  I DO NOT AT THIS TIME SEE ANYTHING OF

2    CONCERN ABOUT THIS.  I THINK IT'S PROBABLY AS BALANCED AS

3    POSSIBLE.

4          THE COURT:  ALL RIGHT.  MS. MOLDEN?

5          MS. MOLDEN:  AND I GUESS, YEAH, OBVIOUSLY, JUST TO

6    GIVE THE JURY A FLAVOR OF WHAT -- WHICH IS PROBABLY THE WHOLE

7    INTENT, JUST TO GIVE THEM AN IDEA OF WHAT THE CASE IS ABOUT.  I

8    WAS JUST THINKING ABOUT IT BEING A QUID PRO QUO.  AND SO I

9    THINK IT'S FINE.

10          THE COURT:  OKAY.  YEAH.  WE EVEN DISCUSSED WHETHER

11   WE NEEDED TO GO AS FAR AS TO CITE TITLE VII AND FLSA.  BUT AT

12   THIS POINT, AND I THINK MOST JURORS DON'T TAKE ANY SIGNIFICANCE

13   FROM -- YEAH, SO I THINK THIS IS ABOUT AS GENERAL AND, AS MS.

14   MYER SAID, WE TRY TO BE AS BALANCED AS POSSIBLE.

15          SO, AGAIN, IT'S JUST TO PUT STUFF IN CONTEXT JUST SO

16   THAT THEY GET AN IDEA THAT THIS IS A CIVIL CASE AND THE GENERAL

17   ALLEGATIONS THAT ARE THERE AND THE CONTENTIONS OF THE PARTIES.

18   OKAY?

19          LET'S GO AHEAD AND TALK ABOUT VOIR DIRE.  THERE WERE

20   NOT THAT MANY OBJECTIONS.  LET ME FIRST, BEFORE WE GO OVER ANY

21   OBJECTIONS, JUST GO OVER MY PROCEDURE SO THAT YOU'LL KNOW.  AND

22   THIS MIGHT AFFECT HOW YOU ASK YOUR QUESTIONS, BECAUSE I WANT

23   YOU ALL TO UNDERSTAND THAT, IN THE PART OF VOIR DIRE WHERE WE

24   DO GENERAL QUESTIONS, YOU WILL NOT GET TO DO IMMEDIATE

25   FOLLOW-UP.

16

1          WHAT WE'LL DO IS, THE JURORS WILL -- THE JURY POOL

2    WILL BE SEATED IN THE COURTROOM WITH THE FIRST 14 IN THE JURY

3    BOX.  THE REMAINING ONES WILL BE SEATED OUT ON ONE OF THE PEWS.

4    I WILL BEGIN BY ASKING QUALIFYING QUESTIONS.  AND I WILL GO

5    OVER THE QUALIFYING QUESTIONS THAT I'LL ASK IN JUST A MOMENT.

6    I KNOW YOU ALL SUBMITTED SOME.  AND, FOR THE MOST PART, MINE

7    JUST TRACK YOU ALL'S.

8          AND THEN AFTER I ASK THE QUALIFYING QUESTIONS, WE

9    WILL GO INTO GENERAL QUESTIONS.

10          I FORGOT MY LITTLE PLACARD.

11          PLAINTIFF'S COUNSEL WILL FIRST ASK GENERAL QUESTIONS.

12    AND THE WAY AND THE ONLY WAY THAT THE JURY PANEL MEMBERS WILL

13    RESPOND IS WITH THESE NUMBER PLACARDS.  SO ANY THAT ARE SAYING

14    YES OR ANSWERING IN THE AFFIRMATIVE WILL HOLD UP THEIR NUMBER

15    AND WILL BE ASKED TO KEEP THE NUMBER HELD UP UNTIL THEIR NUMBER

16    IS CALLED OUT, WHICH WOULD SIGNIFY THAT WE'VE NOTED THAT

17    THEY'VE ANSWERED YES, AND THEN AT THAT TIME THEY'LL PUT THEIR

18    NUMBER DOWN.

19          BUT THEY ARE TOLD DURING THAT PORTION OF THE PROCESS

20    NOT TO ENGAGE IN ANY DIALOGUE, NOT TO ELABORATE.  CERTAINLY

21    THEY ARE PROVIDED WITH THE OPPORTUNITY TO REQUEST THAT THE

22    PERSON ASKING CLARIFY A QUESTION OR REPEAT A QUESTION, BUT

23    THAT'S PRETTY MUCH IT, IS JUST HOLD YOUR NUMBER UP IF YOU'RE

24    ANSWERING YES, KEEP IT DOWN IF YOUR ANSWER IS NO.

25          PLAINTIFF'S COUNSEL WILL GO FIRST, THEN DEFENSE

17

1    COUNSEL.

2         THEN, IN THE NEXT PART, WE WILL DO FOLLOW-UP, OR

3    ONE-BY-ONE QUESTION, INDIVIDUAL QUESTIONING, STARTING WITH

4    JUROR NUMBER ONE.  JUROR NUMBER ONE WILL STAND UP.  AND THE

5    FIRST THING THAT THAT PERSON WILL DO IS FLIP OVER THIS PLACARD.

6    AND THERE ARE SOME BACKGROUND QUESTIONS HERE, ASKING YOUR NAME,

7    WHERE YOU LIVE, YOUR PRESENT OCCUPATION.  I WILL GIVE YOU A

8    COPY OF THIS IN JUST A MOMENT AS WELL SO YOU KNOW EXACTLY WHAT

9    THEY WILL BE ASKING SO THAT YOU CAN TAILOR YOUR QUESTIONS SO

10   THAT YOU DON'T REPEAT THAT INFORMATION IN YOUR QUESTIONS.

11        AFTER THEY ANSWER THOSE QUESTIONS THAT GO DOWN THAT

12   SCRIPT, PLAINTIFF'S COUNSEL WILL THEN ASK ANY FOLLOW-UP

13   QUESTIONS.  AND THEN DEFENSE COUNSEL WILL ASK ANY FOLLOW-UP

14   QUESTIONS.  SO THAT'S WHEN YOU GET TO DO SOME FOLLOW-UP, IN

15   THAT PORTION.

16        AND THEN WE WILL QUALIFY ONLY AS MANY AS WE NEED.  IN

17   THIS CASE, WE NEED 14 QUALIFIED BECAUSE WE WILL SEAT EIGHT.

18   AND ALL OF THEM, ALL EIGHT WILL BE JURORS.  THERE WILL BE NO

19   ALTERNATES.  SO WE WILL SEAT EIGHT.  AND THEN, OF COURSE, EACH

20   SIDE GETS THREE STRIKES.  SO THAT'S WHERE WE GET THE 14 THAT WE

21   NEED TO QUALIFY.

22        WHEN I THINK THAT WE HAVE GOTTEN TO 14, I WILL ASK

23   YOU ALL TO COME UP, OR I'LL ASK THE WHOLE PANEL TO STEP OUTSIDE

24   FOR A BREAK.  AND I'LL CONFERENCE WITH YOU ALL TO SEE WHETHER

25   WE REALLY DO HAVE 14.  SO THAT WILL REQUIRE US TO DISCUSS

18

1   WHETHER ANYBODY HAS ANY STRIKES FOR CAUSE AND, IF SO, WE'LL

2   RULE ON THOSE.

3            BUT I WANT TO MAKE IT CLEAR THAT WE, GENERALLY IN

4   CIVIL JURY SELECTION, I DO NOT GET TO THE BACK OF THE PANEL.  I

5   DON'T QUESTION ALL OF THE JURORS BECAUSE WE ONLY QUALIFY AS

6   MANY AS NEEDED.

7            ALL RIGHT.  SO, FIRST, LET ME ASK IF THERE ARE ANY

8   QUESTIONS, JUST AS TO THE COURT'S PROCEDURE.  MS. MOLDEN?

9            MS. MOLDEN:  I THINK I GOT IT.  I WAS A LITTLE BIT

10  SLOW THE OTHER TIME, BUT I THINK I GOT IT.

11           THE COURT:  EVERY COURT DOES IT DIFFERENTLY.  SO, I

12  MEAN -- AND I WAS THINKING THAT I PROBABLY AT SOME POINT NEED

13  TO PUT OUR PROCEDURE ON OUR WEBSITE JUST BECAUSE IT'S PROBABLY

14  MORE HELPFUL FOR ATTORNEYS TO KNOW BEFORE YOU EVEN SUBMIT YOUR

15  VOIR DIRE QUESTIONS.  SO THAT'S ONE THING THAT I'M LOOKING AT

16  DOING.

17           MS. MYER, ANY QUESTIONS FROM YOU?

18           MS. MYER:  NO.  BUT I DO UNDERSTAND WHY MS. MOLDEN

19  SAID THAT.

20           MS. MOLDEN:  I STOOD UP.  BUT I APPRECIATE YOU BEING

21  GRACIOUS, BECAUSE WHAT YOU SAID WAS, YOU KNOW, EACH COURT DOES

22  IT DIFFERENT.  SHE EXPLAINED IT TO THE JURY.  BECAUSE I WAS

23  LIKE, NO, I DON'T HAVE ANY QUESTIONS.  SHE WAS LIKE, NO, I

24  THINK YOU PROBABLY HAVE QUESTIONS.

25           THE COURT:  YEAH.  I KNOW.  IT'S DONE DIFFERENTLY

1    EVERY PLACE.  SO I JUST LIKE TO TRY TO EXPLAIN IT BEFOREHAND.

2            LET ME FIRST SHARE WITH YOU THE QUALIFYING QUESTIONS.

3    AND NOW THAT YOU ALL HAVE TOLD ME WHO IS GOING TO BE HERE AND

4    WHO IS NOT, I MAY NEED TO TAILOR THIS ACCORDING TO THAT.  FOR

5    INSTANCE, IN THE FIRST ONE, MS. MOLDEN, I DON'T NEED -- I WILL

6    SEE WHO SHOWS UP FIRST.  BUT IT'S SOUNDING LIKE JUST SHAPIRO

7    AND TIAN ARE THE ONES.

8            MS. MOLDEN:  THAT'S CORRECT.

9            THE COURT:  OKAY.  ALL RIGHT.  MS. MOLDEN, ANY

10   CONCERNS, OBJECTIONS, THINGS YOU THINK NEED TO COME OUT, THINGS

11   YOU NEED TO BE ADDED?

12           MS. MOLDEN:  I WONDER -- I THINK IT'S FINE AS IT IS,

13   BUT I WONDER ABOUT DONNA HART.  I MEAN, SHE'S NOT A PARTY TO

14   THIS CASE.  BUT I WONDER IF, IF WE SHOULD ASK WHETHER ANYONE

15   KNOWS HER.

16           THE COURT:  I WILL NOT ASK IN QUALIFYING QUESTIONS.

17           MS. MOLDEN:  OKAY.

18           THE COURT:  I DON'T HAVE ANY PROBLEM WITH -- WELL,

19   AND I'LL HEAR FROM MS. MYER IF SHE HAS AN OBJECTION.  BUT I

20   DON'T HAVE ANY PROBLEM IF YOU ASK WHEN YOU QUALIFY AS TO

21   ANYBODY YOU WANT TO.  AS YOU'LL NOTICE, I'M NOT ASKING ABOUT

22   ANY --

23           MS. MOLDEN:  WITNESS.

24           THE COURT:  -- WITNESSES.  BUT YOUR POSITION MAY BE

25   THAT SHE IS STILL A PARTY, EVEN THOUGH SHE'S NOT A PARTY TO THE

1   TRIAL.

2           MS. MYER?

3           MS. MYER:  I DON'T HAVE ANY OBJECTIONS OR CONCERNS

4   ABOUT THE QUALIFYING QUESTIONS.  AND I DON'T OBJECT TO MS.

5   MOLDEN SEPARATELY ASKING ABOUT DONNA HART.

6           THE COURT:  WOULD THAT BE YOUR REQUEST, THAT SHE ASK,

7   RATHER THAN THE COURT?  OR DO YOU HAVE A PREFERENCE THERE?

8           MS. MYER:  I DON'T HAVE A PREFERENCE.

9           THE COURT:  MS. MOLDEN, DO YOU HAVE A PREFERENCE AS

10  TO WHO ASKS ABOUT MS. HART?

11          MS. MOLDEN:  IT DOESN'T MATTER.

12          THE COURT:  OKAY.  I WILL GO AHEAD AND LET YOU,

13  BECAUSE SINCE SHE HASN'T BEEN SERVED, I SEE HER ROLE HERE MORE

14  AS A WITNESS AT THIS POINT, WHETHER OR NOT SHE DOES TESTIFY.

15  SO I WILL LET YOU ASK ABOUT THAT -- ABOUT HER.

16          MS. MOLDEN:  OKAY.

17          THE COURT:  OKAY.  AND I'M NOT HEARING ANY OTHER

18  ISSUES OR CONCERNS.  SO WE'LL PROCEED WITH THOSE THAT THE COURT

19  HAS PREPARED.

20          NEXT, LET ME GIVE YOU A COPY OF WHAT APPEARS ON THE

21  BACK OF THIS PLACARD SO THAT YOU KNOW THAT -- KNOW THE

22  BACKGROUND ANSWERS THAT THE JURORS WILL PROVIDE.  AND WHAT WE

23  TELL THEM IS NOT TO WASTE TIME BY READING THESE QUESTIONS, JUST

24  TO SIMPLY GO DOWN THE LIST AND GIVE US THE ANSWERS.  AND,

25  AGAIN, THAT WILL BE THEIR INTRODUCTION OF THEMSELVES WHEN THEY

1    FIRST STAND UP ON PART TWO, WHICH IS THE FOLLOW-UP OR

2    INDIVIDUAL QUESTIONING.

3           ALL RIGHT.  THERE'S REALLY NOTHING TO DISCUSS THERE.

4    I JUST WANTED YOU ALL TO KNOW.

5           SO LET'S GO AHEAD AND MOVE ON TO ANY OBJECTIONS.  AND

6    I THINK EACH SIDE REALLY ONLY HAD ONE OBJECTION TO THE OTHER'S

7    PROPOSED VOIR DIRE QUESTIONS.

8           FIRST OF ALL, AGAIN, I WILL JUST CAUTION YOU TO, TO

9    LOOK BACK AT YOUR QUESTIONS AND MAKE SURE THEY CONFORM TO THE

10   COURT'S PROCEDURE, BECAUSE I DO, I DO NOTE THAT, IN SOME OF THE

11   QUESTIONS YOU'VE PROPOSED, YOU HAVE IMMEDIATE FOLLOW-UP.  AND

12   SO, AGAIN, WE WILL NOT DO IMMEDIATE FOLLOW-UP.  BUT IF YOU

13   STILL WANT TO ASK THOSE PARTICULAR QUESTIONS, YOU WILL HAVE AN

14   OPPORTUNITY TO DO SO DURING THE INDIVIDUAL QUESTIONING PORTION.

15          MS. MYER OBJECTS TO PLAINTIFF'S QUESTION NUMBER NINE

16   REGARDING CONSTRUCTIVE DISCHARGE.  AND I'M NOT SURE WHY THAT

17   WOULD NEED TO BE ASKED.  MY UNDERSTANDING, AND I THINK

18   PLAINTIFF HAS CONCEDED THAT CONSTRUCTIVE DISCHARGE IS NOT A

19   PART OF THIS CASE.  SO I'M NOT SURE, MS. MOLDEN, WHY YOU WOULD

20   NEED TO ASK ABOUT CONSTRUCTIVE DISCHARGE.  BUT IF YOU STILL

21   INTEND TO, LET ME HEAR FROM YOU ON THAT.

22          MS. MOLDEN:  I DON'T -- I THINK JUST THE

23   CIRCUMSTANCES UNDER WHICH MR. CARROLL LEFT.  I MEAN, I

24   UNDERSTAND THAT WE DON'T HAVE A CONSTRUCTIVE DISCHARGE CLAIM.

25   BUT -- AND I CERTAINLY DON'T HAVE TO PHRASE IT AS HAS ANYONE

22

1    EVER BEEN CONSTRUCTIVELY DISCHARGED FROM A JOB.

2            BUT HE CERTAINLY FELT PRESSURED TO LEAVE.  AND SO

3    JUST WONDERING IF THERE ARE OTHERS WHO HAVE BEEN IN THAT SAME

4    SITUATION.

5            BUT I DON'T, I DON'T FEEL SO STRONGLY ABOUT IT THAT I

6    WANT TO REALLY FIGHT FOR IT.  BUT I FELT THAT IT WAS RELEVANT.

7            THE COURT:  WELL, LET ME ASK FIRST, FIRST OF ALL, I

8    AGREE WITH MS. MYER THAT THE TERM -- AND YOU'VE ALREADY, I

9    THINK, SAID CONSTRUCTIVE DISCHARGE SHOULDN'T BE ASKED AS IT'S

10   PRESENTED HERE BECAUSE THEY WON'T BE, THEY WON'T BE INSTRUCTED

11   ON IT.  IT WON'T BE DEFINED FOR THEM.  SO I DON'T EVEN KNOW IF

12   SOME OF THEM WILL UNDERSTAND WHAT THAT MEANS.

13           MS. MOLDEN:  SURE.

14           THE COURT:  BUT, MS. MYER, WHAT'S YOUR POSITION WITH

15   RESPECT TO WHETHER MS. MOLDEN SHOULD BE PERMITTED TO ASK A

16   QUESTION SUCH AS, HAVE ANY OF YOU ALL EVER FELT THE NECESSITY

17   TO LEAVE A JOB BECAUSE OF WHAT'S GOING ON, BASICALLY TO

18   DESCRIBE CONSTRUCTIVE DISCHARGE WITHOUT LABELING IT AS SUCH.

19           AND I STILL DON'T KNOW IF, UNDER THE CIRCUMSTANCES,

20   THAT SHOULD BE PERMISSIBLE BECAUSE HE'S NOT, HE'S NOT FIGHTING

21   FOR THAT.  REGARDLESS OF WHAT YOU CALL IT, HE'S NOT REALLY

22   ARGUING THAT.

23           BUT WHAT'S YOUR POSITION?

24           MS. MYER:  I AGREE.  I THINK THAT, FIRST OF ALL, I'D

25   NEED TO KNOW EXACTLY HOW IT WOULD BE PHRASED TO BE ABLE TO

1   RESPOND MORE SPECIFICALLY.

2           THE COURT:  YEAH.

3           MS. MYER:  BUT I DON'T THINK THAT THE FACTS AS

4   THEY'VE BEEN LAID OUT IN THIS CASE WOULD SUPPORT THAT KIND OF A

5   QUESTION.

6           THE COURT:  YEAH.  I AGREE.

7           AT THIS POINT, I'M GOING SUSTAIN THAT AS

8   ARGUMENTATIVE AND AS IRRELEVANT.  THAT ONE IS IRRELEVANT TO

9   WHAT'S BEFORE US.  SO I WOULD NOT ALLOW THAT QUESTION TO BE

10  ASKED.  AND I THINK THAT IS NUMBER NINE.

11          MS. MOLDEN:  OKAY.

12          THE COURT:  ALL RIGHT.  AND THEN, MS. MOLDEN, YOU

13  OBJECTED TO DEFENSE NUMBER 19 ON WHETHER POTENTIAL JURORS HAVE

14  EVER MADE A CLAIM FOR PAY NOT EARNED.  AND I THINK YOUR

15  OBJECTION WAS THAT THAT WAS ARGUMENTATIVE BECAUSE IT INSINUATED

16  CERTAIN THINGS ABOUT MR. CARROLL.  IS THAT CORRECT?

17          MS. MOLDEN:  CERTAINLY, AND ESPECIALLY WHERE HE IS

18  ADMITTING THAT.  SO, I MEAN, THAT'S JUST NOT A -- HE DIDN'T

19  MAKE THE CLAIM.  DONNA HART PUT IN THE HOURS FOR HIM.  AND SO I

20  THINK THAT THAT'S VERY ARGUMENTATIVE.

21          THE COURT:  ALL RIGHT.  MS. MYER?  LET ME GET TO THAT

22  EXACT QUESTION.

23          MS. MYER:  I THINK THAT, THAT PART OF THE REASON THAT

24  WE HAVE THAT QUESTION IN HERE IS NOT JUST THE PAY THAT HE

25  RECEIVED, BUT OUR DEFENSE TO THE FLSA CLAIM IS THAT HE ACTUALLY

24

1    HAS NOT EARNED PAY THAT HE DIDN'T RECEIVE, THAT HE'S BEEN PAID

2    EVERYTHING THAT HE EARNED.  AND SO THIS GOES TO THE HEART OF

3    THAT, OF WHAT HIS CLAIM IS UNDER FLSA, THAT HE'S EARNED PAY

4    THAT HE HAS NOT BEEN -- NOT RECEIVED.

5            OUR DEFENSE IS, HE HAS -- THAT THIS CLAIM IS

6    ESSENTIALLY A CLAIM FOR PAY THAT HE HAS NOT EARNED.

7            THE COURT:  OKAY.  I'M GOING TO SUSTAIN THAT ONE,

8    TOO, AS ARGUMENTATIVE.  I CERTAINLY UNDERSTAND THE POSITIONS

9    THAT THE PARTY WILL PRESENT.  I DON'T THINK THAT THAT GIVES US

10   ANY INSIGHT AS TO WHETHER JURORS WILL BE FAIR AND IMPARTIAL.  I

11   THINK IT'S JUST A WAY OF GETTING OUT SOME FACTS IN THE PARTIES'

12   ALLEGATIONS DURING VOIR DIRE.

13           SO I'M GOING TO GO AHEAD AND SUSTAIN THAT ONE AS

14   WELL.  THAT'S DEFENDANT'S 19.

15           ALL RIGHT.  LET'S GO AHEAD AND TALK ABOUT MOTIONS IN

16   LIMINE.

17           MS. MOLDEN, YOU DIDN'T FILE ANY.  IS THAT CORRECT?

18           MS. MOLDEN:  THAT'S CORRECT.

19           THE COURT:  OKAY.  SO LET'S GO AHEAD AND DEAL WITH

20   MS. MYER'S.

21           MS. MYER:  YOUR HONOR?

22           THE COURT:  YES, SURE.

23           MS. MYER:  BEFORE WE MOVE COMPLETELY AWAY FROM VOIR

24   DIRE --

25           THE COURT:  YES, MA'AM.

1           MS. MYER:  -- THERE IS ONE OTHER ISSUE THAT CAME UP

2    AFTER WE FILED OUR PRETRIAL ORDER.  AND I DISCUSSED IT BRIEFLY

3    WITH MS. MOLDEN OUTSIDE EARLIER, AND THAT IS THE TRUMP EFFECT.

4    FRANKLY, WE'VE GOT A CASE OBVIOUSLY WHERE THERE ARE ALLEGATIONS

5    OF SEXUAL HARASSMENT.  AND WE'VE GOT NOW A PRESIDENTIAL

6    CAMPAIGN WHERE THERE ARE MULTIPLE ALLEGATIONS OF SEXUAL

7    HARASSMENT AND, AND AS WELL AS MORE SERIOUS SEXUAL CHARGES.

8           AND I THINK THAT THAT'S SOMETHING THAT, I DON'T KNOW

9    WHICH WAY IT CUTS, BUT I THINK THAT IT'S SOMETHING THAT NEEDS

10   TO BE ADDRESSED IN VOIR DIRE AND PROBABLY WOULD HAVE BEEN DEALT

11   WITH BY BOTH SIDES HAD THE ISSUES COME UP BEFORE WE SUBMITTED

12   OUR PRETRIAL ORDER.

13          SO WE, WE KIND OF NOODLED AROUND A LITTLE BIT THIS

14   MORNING ABOUT WHAT WE SHOULD ASK.  AND WHAT I WOULD SUGGEST IS

15   A GENERAL QUESTION OF WHETHER THE ALLEGATIONS IN THE

16   PRESIDENTIAL CAMPAIGN ARE, ARE, ARE EXPECTED TO IMPACT A

17   POTENTIAL JUROR'S DELIBERATIONS IN THIS CASE.

18          MS. MOLDEN, PERHAPS, PERHAPS I PHRASED IT BADLY,

19   BUT --

20          MS. MOLDEN:  YEAH.  I THINK IT PROBABLY IS RELEVANT

21   TO SEE HOW SEXUAL HARASSMENT IS A TOPIC OF THIS CASE AND THE

22   SUBJECT MATTER IN THE TRUMP DEALINGS.  AND I THINK I SUGGESTED

23   SOMETHING MORE GENERAL, DOES ANYONE HERE HAVE ANY STRONG

24   FEELINGS ONE WAY OR THE OTHER AS TO THE ALLEGATIONS OF SEXUAL

25   HARASSMENT AS IT RELATES TO PRESIDENTIAL CANDIDATE TRUMP SO

26

1   THAT, YOU KNOW --

2           THE COURT:  THAT'S FINE.  I MEAN, IF YOU ALL --

3   ANYBODY WHO WANTS TO SUBMIT AN ADDITIONAL QUESTION OR A COUPLE

4   OF QUESTIONS IN THAT AREA, PLEASE JUST GO AHEAD AND FORWARD

5   THEM BEFORE TRIAL.  AND THAT'S FINE.

6           MS. MYER:  OKAY.

7           THE COURT:  AND WE WILL HAVE AN OPPORTUNITY TO

8   DISCUSS THEM BEFORE WE DECIDE EXACTLY HOW THE QUESTION IS

9   PROPOUNDED.

10          MS. MYER:  OKAY.  PERHAPS, MS. MOLDEN, YOU AND I

11  CAN --

12          MS. MOLDEN:  SURE.

13          MS. MYER:  -- CONFER.

14          THE COURT:  I THINK THAT'S A GOOD IDEA.

15          ALL RIGHT.  ON TO THE DEFENSE MOTION IN LIMINE.

16  THAT'S BROKEN DOWN INTO, I BELIEVE, NINE PARTS.

17          ALL RIGHT.  THE FIRST ONE IS TESTIMONY BY MR. CARROLL

18  REGARDING THE CONTENTS OF E-MAILS, TEXT MESSAGES, AND VOICE

19  MESSAGES FROM MS. HART IN LIGHT OF THE SPOLIATION.

20          AND I BELIEVE, MS. MOLDEN, YOUR POSITION IS THAT

21  THESE WOULD NOT BE USED FOR THE TRUTHFULNESS BUT IN SOME OTHER

22  MANNER.  DO YOU WANT TO ELABORATE?  I THINK YOUR POSITION IS

23  THAT THEY ARE NOT HEARSAY, IF THAT'S WHAT THE OBJECTION IS.

24  BUT DO YOU WANT TO ELABORATE?

25          MS. MOLDEN:  THAT'S CORRECT, YOUR HONOR.  I THINK

1   THAT VERY FEW, IF ANY, OF THESE E-MAILS WILL BE OFFERED FOR THE

2   TRUTH OF THE MATTER ASSERTED.  BUT, I MEAN, YOU LOOK AT THE

3   CONTENT OF THE E-MAIL, WE'RE NOT TRYING TO ESTABLISH THAT.  SO

4   I DON'T THINK THAT, THAT ANY OF THESE E-MAILS ARE OBJECTIONABLE

5   BASED ON HEARSAY.

6          JUST AS I EXPLAINED, I THINK, IN OUR BRIEF, IN THE

7   SEXUAL HARASSMENT CASES, IT'S PLAINTIFF'S BURDEN OF PROOF TO

8   PROVE THAT HE OR SHE WAS THE SUBJECT TO UNWARRANTED SEXUAL

9   HARASSMENT AND THAT THAT BELIEF WAS BOTH SUBJECTIVELY AND

10  OBJECTIVELY REASONABLE.

11         AND ONE WAY WE GET TO ESTABLISH THAT IS BY SAYING,

12  YOU KNOW, THIS IS JUST WHAT WAS SAID.  IT'S NOT, WE'RE TRYING

13  TO PROVE THAT THIS IS WHAT SHE WAS ACTUALLY PLANNING TO DO OR

14  THAT SHE WANTED TO DO.

15         ANY REASONABLE PERSON READING E-MAILS OF THIS NATURE

16  WOULD BELIEVE THAT MR. CARROLL ACTED REASONABLY.  SO --

17         THE COURT:  ALL RIGHT.  MS. MYER?

18         MS. MYER:  WELL, WHAT I WOULD ASK THE COURT TO DO IS

19  TO ACTUALLY LOOK AT THE E-MAILS ONE BY ONE SO THAT WE CAN -- SO

20  THAT I CAN EXPLAIN WHAT MY CONCERN IS WITH RESPECT TO EACH OF

21  THOSE E-MAILS.  AND I DO HAVE A SET FOR THE COURT OF JUST ONES

22  -- JUST THE EXHIBITS THAT WE HAVE RAISED ISSUES AS TO.

23         DO YOU HAVE A SET?

24         MS. MOLDEN:  I THINK I DO, BUT YOU'LL JUST HAVE TO

25  POINT ME TO IT.

28

1            MS. MYER:  AND I'VE GOT THEM ORGANIZED BY, BY DATES,

2    NUMBER, IF I COULD PROVIDE THIS TO THE COURT.

3            THE COURT:  YES, MA'AM.

4            MS. MOLDEN:  AND I WILL SAY THAT ONE OF OUR ISSUES,

5    YOUR HONOR, WAS WITH THE FACT THAT WE WERE NOT -- IN MS. MYER'S

6    BRIEF, SHE DIDN'T POINT TO ANY SPECIFIC E-MAILS, SO WE WERE

7    WITHOUT THE ABILITY TO RESPOND TO EACH E-MAIL.  SO WE WERE JUST

8    FORCED TO RESPOND IN A GENERAL WAY AS WELL.

9            SO NOW WE'RE HERE LOOKING AS SHE'S CREATING AN

10   ARGUMENT THAT WASN'T RAISED BEFORE.

11           THE COURT:  I HAVE RULED IN A GENERAL WAY, TOO.  SO I

12   DIDN'T LOOK AT THEM ONE BY ONE, EITHER.  SO I DON'T KNOW IF

13   WE'RE PLANNING TO GO THROUGH THESE ONE BY ONE OR WHAT.

14           MS. MOLDEN:  I MEAN --

15           MS. MYER:  IT'S A FAIRLY SHORT SET --

16           THE COURT:  OKAY.

17           MS. MYER:  -- YOUR HONOR, BUT I THINK THAT THE

18   LANGUAGE IN THE E-MAILS WOULD, WOULD BE IMPORTANT TO TAKE A

19   LOOK AT.

20           THE COURT:  LET ME ASK YOU THIS.  IS THERE ANY WAY

21   THAT YOU CAN CATEGORIZE THEM, OR IS THAT TOO DIFFICULT?  OR DO

22   THEY FIT WITHIN GENERAL CATEGORIES OF WHAT -- OF ARGUMENTS, SO

23   TO SPEAK, OR --

24           MS. MYER:  FOR THIS CATEGORY, THIS FIRST CATEGORY,

25   IT'S ESSENTIALLY -- THESE ARE E-MAILS WHERE SHE SAYS, FOR

1    EXAMPLE, I SERVICED SUCH AND SUCH A STORE, OR I ENTERED TIME,

2    OR I DID X.

3            THE COURT:  WHAT ACTIONS MS. HART TOOK.

4            MS. MYER:  WHAT ACTIONS SHE TOOK.  AND SO OUR CONCERN

5    IS THAT, THAT THE JURY IS GOING TO READ THESE E-MAILS AND

6    INTERPRET THEM AS EVIDENCE THAT MS. HART DID, DID SOMETHING.

7    AND THAT IS CLASSIC HEARSAY.

8            MS. MOLDEN:  IF IT'S OFFERED FOR THAT, IT'S CLASSIC

9    HEARSAY.  BUT IF IT'S OFFERED, FOR EXAMPLE, TO SHOW THAT SHE

10   HAD THE ABILITY TO GO INTO HIS TIME AND MANIPULATE HIS TIME,

11   THAT'S NOT HEARSAY IF WE OFFER IT FOR A TOTALLY DIFFERENT

12   MATTER SO THAT, YOU KNOW, THAT'S --

13           THE COURT:  WELL, AND I DON'T KNOW WHETHER YOU ALL

14   CONSIDERED 801(D)(2)(D) THAT EXCLUDES FROM HEARSAY STATEMENTS

15   MADE BY A PARTY'S AGENT OR EMPLOYEE ON A MATTER WITHIN THE

16   SCOPE OF THAT BUSINESS RELATIONSHIP AND WHILE IT EXISTED.

17           ALSO, I MEAN, THERE IS POSSIBLY AN ARGUMENT OF STATE

18   OF MIND UNDER 803(3).  BUT THAT FIRST ONE, ESPECIALLY WHERE IT

19   WOULD BE EXCLUDED, IF THAT IS WHAT SHE'S DOING, DESCRIBING,

20   DESCRIBING THINGS AS AN AGENT, I'M NOT SURE HOW DEFENSE GETS

21   AROUND THAT, BECAUSE I, I HAVE TAKEN INTO CONSIDERATION

22   SOMEWHERE ELSE IN YOUR MOTION IN LIMINE YOUR SUGGESTION -- AND

23   I THINK PLAINTIFF MAY HAVE EVEN COMMENTED ON THIS, TOO -- TO

24   REDACT CERTAIN STATEMENTS MS. HART MADE ABOUT HER JOB DUTIES.

25           BUT THEN WHEN I CONSIDER 801(D)(2)(D), IT SEEMS LIKE

30

1    UNDER, UNDER THAT SECTION, UNDER THAT RULE, THESE KINDS OF

2    STATEMENTS MAY EVEN BE EXCLUDED AND MAY NOT EVEN BE HEARSAY.

3            MS. MOLDEN:  YEAH.

4            MS. MYER:  WELL, I THINK THAT THERE IS A QUESTION OF

5    WHETHER SHE, AS AN EMPLOYEE OF ATA, HAD THE AUTHORITY TO DO THE

6    KINDS OF THINGS THAT, THAT SHE -- THAT THESE E-MAILS SUGGEST

7    SHE DID.  AND SO THAT RAISES A QUESTION OF WHETHER 801(D)(2)(D)

8    WOULD APPLY IF SHE DIDN'T HAVE THE AUTHORITY TO DO CERTAIN

9    THINGS.

10           BUT, MOST IMPORTANTLY, I THINK THAT, THAT THESE,

11   THESE E-MAILS THAT WE HAVE IDENTIFIED HAVE HER SPECIFICALLY

12   SAYING, I DID X, Y, AND Z.  AND THERE'S NOTHING ELSE IN THOSE

13   E-MAILS THAT WOULD SUGGEST OTHER, OTHER REASONS FOR INTRODUCING

14   THE E-MAILS OTHER THAN TO ESTABLISH THAT SHE DID THE THINGS

15   THAT IT SAYS IN HERE THAT SHE DID.  SO THERE DOESN'T APPEAR TO

16   BE ANY OTHER PURPOSE IN ADMITTING THE E-MAILS, WHICH BRINGS US

17   BACK TO 802.

18           MS. MOLDEN:  WELL, AND, YOUR HONOR, I DID LOOK AT

19   THAT AS WELL.  AND I THINK THAT -- I MEAN, WHY -- I MEAN, WHY

20   DOES THERE NEED TO BE A DIFFERENT REASON?  I THINK, FIRST OF

21   ALL, WHEN I THOUGHT ABOUT THESE E-MAILS, MY INTENT WAS, LISTEN,

22   THIS WOMAN HAD THE ABILITY TO AND DID, IN FACT, MANIPULATE HIS

23   TIME.  SOMETIMES SHE ADDED MORE, SOMETIMES SHE ADDED LESS.  BUT

24   THAT'S, THAT'S CLEAR BASED ON HER, HER TEXT MESSAGES.

25           THERE'S BEEN SOME ARGUMENT THAT HE HAD THIS VERY

31

1    SPECIFIC LOG-IN INFORMATION AND THAT -- AND WE ANTICIPATE THAT

2    DEFENDANTS WILL ARGUE WHAT THEY ARGUED IN THEIR SUMMARY

3    JUDGMENT BRIEFS, THAT SHE DIDN'T HAVE THE ABILITY TO DO THIS.

4    AND SO THOSE E-MAILS SPEAK TO THE -- GO TO THE HEART OF THAT.

5              BUT THEN THERE'S ALSO THE FACT THAT SHE IS ADMITTING

6    OUTRIGHT THAT SHE ENTERED TIME.  AND SO I DON'T --

7              THE COURT:  DID THE SUMMARY, DID THE R&R SUMMARY

8    JUDGMENT SAY SHE DIDN'T HAVE THE ABILITY OR JUST THE AUTHORITY?

9    BECAUSE I REMEMBER THERE WAS A DISTINCTION BETWEEN THAT.  AND

10   THERE WAS ONE THING BEING ARGUED, BUT THAT WASN'T NECESSARILY

11   WHAT WAS SUPPORTED BY MS. DOTY'S AFFIDAVIT.

12             MS. MOLDEN:  SURE.

13             MS. MYER:  SHE DID NOT HAVE THE AUTHORITY, AND THAT

14   IS WHAT WE SAID IN MS. DOTY'S AFFIDAVIT.

15             THE COURT:  THAT SHE DIDN'T HAVE THE AUTHORITY.

16             MS. MYER:  DID NOT HAVE THE AUTHORITY.

17             THE COURT:  SO WHAT WAS LEFT IN QUESTION WAS WHETHER

18   SHE HAD THE ABILITY.  BUT MS. DOTY SAID SHE DEFINITELY DIDN'T

19   HAVE THE AUTHORITY.

20             MS. MYER:  THAT'S CORRECT.

21             MS. MOLDEN:  THAT'S RIGHT.  BUT I THINK SHE WAS THEIR

22   AGENT REGARDLESS.  I MEAN, SHE HAD APPARENT AUTHORITY.  AND SO

23   I DON'T KNOW THAT THAT REALLY MATTERS.  BUT THERE WAS SOME TALK

24   ABOUT THIS UNIQUE LOG-IN INFORMATION.  AND I THINK JURORS COULD

25   GET CONFUSED.  WELL, HE HAD THIS, LIKE HE HAD TO ENTER SOME

1    SECRET PASS CODE THAT ONLY HE WAS PRIVY TO.  AND I THINK THAT

2    THIS MAKES CLEAR THAT THAT JUST WASN'T THE CASE.

3            AND SO I THINK IT'S NOT HEARSAY FOR A NUMBER OF

4    REASONS.  SO, AGAIN, THIS IS JUST ME SITTING HERE ADDRESSING

5    THIS RIGHT NOW, BUT I DON'T THINK THAT IT'S HEARSAY.

6            THE COURT:  AND UNDER THAT RULE, WHO HAS THE ONUS,

7    WHO HAS THE BURDEN OF SHOWING WHETHER OR NOT THAT AUTHORITY

8    ACTUALLY EXISTED?  I'M TRYING TO -- I CAN'T REMEMBER HOW THE

9    FOUNDATION OF THAT IS LAID, WHETHER THERE WOULD HAVE TO --

10   WHETHER THAT -- IT COULDN'T BE A JURY QUESTION BECAUSE THAT

11   DETERMINATION WOULD NEED TO BE MADE BEFORE IT'S PRESENTED TO

12   THE JURY SO THAT YOU COULD DETERMINE WHETHER IT ACTUALLY

13   QUALIFIES AS A HEARSAY EXCLUSION.

14           MS. MOLDEN:  I'LL SEE IF I CAN FIND IT REAL QUICK.

15   BUT --

16           THE LAW CLERK:  SO, JUDGE, ARE YOU ASKING WHO HAS THE

17   BURDEN TO DETERMINE WHAT AUTHORITY SHE HAS?

18           THE COURT:  WELL, IF THE ARGUMENT IS, YOU CAN'T USE

19   THAT AS AN EXCLUSION BECAUSE SHE REALLY DIDN'T HAVE THAT

20   AUTHORITY, I THINK THAT THAT'S -- I THINK THAT THE APPARENT

21   AUTHORITY IS CORRECT, THAT IT STILL QUALIFIES AS AN EXCLUSION.

22   I JUST WANT TO MAKE SURE.

23           THE LAW CLERK:  I WOULD AGREE.  I DON'T THINK UNDER

24   THE RULE YOU'D HAVE TO SHOW THE AUTHORITY.  I THINK THE RULE IS

25   JUST THAT -- IT'S A MATTER, SHE WAS AN AGENT OR EMPLOYEE.  AND

33

1   THEY WERE DISCUSSING A MATTER WITHIN THE SCOPE OF THAT

2   RELATIONSHIP.

3           THE COURT:  YEAH.  I THINK YOU'RE RIGHT.

4           THE LAW CLERK:  SO THAT WOULD BE THE FOUNDATION THAT

5   WE WOULD NEED.

6           MS. MOLDEN:  I'M NOT LOOKING AT THE FEDERAL RULES.  I

7   PICKED UP THE STATE RULES.  BUT ISN'T IT JUST A STATEMENT MADE

8   DURING THE AGENCY OF THE RELATIONSHIP ABOUT A SUBJECT ABOUT

9   WHICH THE PERSON HAD AUTHORITY TO MAKE?  SO WHETHER OR NOT HER

10  STATEMENTS TO HIM WERE CORRECT OR NOT, SHE HAD THE APPARENT

11  AUTHORITY TO MAKE THOSE STATEMENTS.  SO --

12          THE COURT:  I AGREE, MS. MYER.  I DON'T SEE HOW YOU

13  -- I THINK THESE ARE EXCLUDED FROM HEARSAY.

14          MS. MYER:  WELL, YOUR HONOR, THOSE, THOSE WOULD BE

15  ONLY WITH RESPECT TO THE PERIOD OF TIME DURING WHICH THERE WAS

16  AN EMPLOYMENT RELATIONSHIP.  MANY --

17          THE COURT:  AN EMPLOYMENT RELATIONSHIP BETWEEN WHO

18  AND WHO?  BETWEEN ATA AND HER OR MR. CARROLL?

19          MS. MYER:  BETWEEN ATA AND MR. CARROLL.

20          THE COURT:  UNH-UNH.

21          MS. MOLDEN:  NO.

22          MS. MYER:  SO ONCE, ONCE THAT EMPLOYMENT RELATIONSHIP

23  IS OVER, THERE ARE -- MOST OF THESE E-MAILS WE'RE ACTUALLY

24  DEALING WITH IS HEARSAY, ARE E-MAILS THAT WERE SENT BY MS. HART

25  OR DATED AFTER THAT EMPLOYMENT RELATIONSHIP IS OVER.

1          THE COURT:  WELL, I DISAGREE WITH THAT, BECAUSE THE

2     FOCUS OF THE RELATIONSHIP IS BETWEEN MS. HART, AS THE AGENT,

3     AND ATA.  IT'S NOT FOCUSING ON MS. HART AND TO AN EMPLOYEE.

4     IT'S BETWEEN ATA AND MS. HART.  AND ESPECIALLY IF THERE ARE

5     STILL THINGS GOING ON, LIKE PAYMENTS BEING MADE FROM ATA TO MR.

6     CARROLL THAT ARE STILL BEING MADE BY ATA, AND MS. HART IS THE

7     AGENT THROUGH WHICH THOSE PAYMENTS ARE BEING MADE AND ALL, I

8     DON'T THINK THAT THAT -- HIS RESIGNATION FORECLOSES APPLICATION

9     OF THIS RULE.

10          SO I'M GOING TO -- LET'S SEE.  WHICH ONE IS THAT,

11     NUMBER TWO?  DID WE SKIP ONE?

12          THE LAW CLERK:  I THINK THEY COMBINED, YEAH.

13          THE COURT:  OKAY.  WELL, LET ME SAY THAT I'M GOING TO

14     DENY NUMBER ONE.  WELL -- AND THEN, MS. MYER, I DON'T KNOW

15     WHETHER YOU HAD FINISHED FULLY PRESENTING ON THAT, BECAUSE I

16     THINK, AS FAR AS WE HAD GOTTEN, YOU WERE TRYING TO CATEGORIZE

17     THE E-MAIL.

18          SO I'M GOING TO DENY WITH RESPECT TO THIS FIRST

19     CATEGORY WHERE I FIND THAT SHE IS DESCRIBING HER DUTIES WITHIN

20     THE SCOPE OF ATA EMPLOYMENT AND AS AN AGENT FOR ATA.

21          IS THERE ANOTHER CATEGORY THAT YOU ARE ARGUING?

22          MS. MYER:  ACTUALLY, I THINK WE SKIPPED ISSUE ONE.  I

23     THINK WE JUST DEALT WITH ISSUE TWO, WHICH IS HEARSAY PROHIBITED

24     BY AUTHORITY 802, BECAUSE ISSUE ONE IS ACTUALLY A LITTLE BIT

25     DIFFERENT.

1          THE COURT:   OKAY.

2          MS. MYER:   ISSUE ONE IS MR. CARROLL TESTIFYING ABOUT

3     THE CONTENTS OF E-MAILS, VOICEMAIL MESSAGES, AND TEXT MESSAGES

4     THAT DO NOT EXIST ANYMORE.   IN OTHER WORDS, HIM DESCRIBING WHAT

5     HE CONTENDS WAS CONTAINED IN THOSE MESSAGES.

6          AND, AND I UNDERSTAND THE COURT HAS ALREADY RULED ON

7     SPOLIATION, BUT THIS IS A LITTLE BIT DIFFERENT ISSUE BECAUSE,

8     IN EFFECT, HE WOULD REAP THE BENEFIT OF BEING ABLE TO TELL THE

9     JURY WHAT WAS ALLEGEDLY IN THOSE MESSAGES THAT HE PERSONALLY

10    HAS, HAS SPOLIATED.   AND THERE IS NO WAY TO -- FOR ATA OR

11    ANYBODY ELSE TO ACTUALLY KNOW WHAT'S IN THOSE MESSAGES BECAUSE

12    THEY DON'T EXIST ANYMORE.

13         AND SO WE'RE ASKING THAT HE NOT BE ABLE TO BE ALLOWED

14    TO DESCRIBE THE CONTENTS OF THOSE MESSAGES.

15         THE COURT:   OKAY.   WELL, I WOULD DENY THAT.   THAT, TO

16    ME, IS NOT -- IT WASN'T CLEAR TO ME WHETHER YOU WERE ACTUALLY

17    MAKING A HEARSAY-TYPE OBJECTION OR SPOLIATION ONE OR KIND OF

18    COMBINING THEM.   I THINK WE'VE ALREADY HAD A SPOLIATION

19    HEARING, AT WHICH I ESSENTIALLY RULED THAT EXCLUSION WOULD NOT

20    BE THE REMEDY.

21         WHAT I WOULD ALLOW IS FOR YOU TO DO A SIFTING

22    CROSS-EXAMINATION OF MR. CARROLL AS TO ANY CONTENT THAT HE

23    TESTIFIES TO.   BUT I'M NOT GOING TO FIND THAT HE JUST CAN'T

24    TESTIFY AS TO WHAT'S IN THEM.

25         AND AS FAR AS THERE'S NO WAY FOR US TO KNOW, I MEAN,

36

1    HE'S SUBJECT TO THE SAME RESTRICTION.  HE DOESN'T HAVE THE

2    E-MAIL IN FRONT OF HIM TO SAY, SEE, THIS IS WHAT I GOT.  HE'S

3    JUST GOT TO TESTIFY.  AND THEN YOU GET THE OPPORTUNITY TO

4    CROSS-EXAMINE HIM.

5            SO I'M GOING TO DENY AS TO NUMBER ONE.

6            MS. MYER:  OKAY.  ISSUES THREE AND FOUR DEAL WITH MR.

7    CARROLL SPECULATING ABOUT WHAT HE BELIEVES HAPPENED OUTSIDE OF

8    HIS, OUTSIDE OF HIS PRESENCE, OUTSIDE OF HIS HEARING, ET

9    CETERA.  AND, OF COURSE, UNDER FRA 602, HE'S REQUIRED TO

10   TESTIFY ONLY ON THE BASIS OF HIS PERSONAL KNOWLEDGE.

11           AND THIS IS WHERE -- I'M SORRY THAT I DON'T HAVE THE

12   TRANSCRIPT FROM THE HEARING ON THE SPOLIATION BECAUSE I BELIEVE

13   HE GAVE SOME TESTIMONY AT THAT HEARING.  I'D LIKE -- I WISH I

14   COULD QUOTE TODAY WHERE HE TRIED TO GIVE HIS OPINION AS TO WHAT

15   HE BELIEVES MS. HART INTENDED.  THERE WAS ALSO -- THERE WERE

16   ALSO SOME EXAMPLES IN HIS --

17           THE COURT:  DECLARATION.

18           MS. MYER:  -- IN HIS DECLARATION IN RESPONSE TO

19   SUMMARY JUDGMENT MOTION.

20           THE COURT:  OKAY.  LET ME GO BACK, THOUGH, JUST TO

21   MAKE IT CLEAR, THAT I DENIED AS TO ONE AND TWO.  I THINK, LIKE

22   JESSICA SAID, WE KIND OF MERGED THOSE.  SO I JUST WANTED TO BE

23   CLEAR THAT I WAS DENYING BOTH MOTIONS IN LIMINE ONE AND TWO.

24           WE'VE MOVED NOW TO THREE.  AND I'LL HEAR FROM YOU,

25   MS. MOLDEN.  BUT I AGREE WITH MS. MYER THAT HE SHOULD NOT BE

37

1    PERMITTED TO TESTIFY AS TO MS. HART'S INTENTIONS.  BUT HE CAN

2    STILL TESTIFY AS TO HER CONDUCT.

3           THE SPECIFIC EXAMPLES IN THE DECLARATION I THINK

4    APPEARED IN PARAGRAPHS 13 AND 16.  FOR INSTANCE, IN PARAGRAPH

5    13 OF THE DECLARATION TO -- ATTACHED TO THE SUMMARY JUDGMENT,

6    HE SAID THAT MS. HART WOULD SHOW UP FOR NO OTHER REASON THAN TO

7    SEXUALLY HARASS ME.

8           I DON'T KNOW HOW HE WOULD KNOW WHY ELSE SHE SHOWED

9    UP.  I MEAN, SO THAT I HAVE A CONCERN WITH THAT.

10          AND THEN IN 16, HE SAID, ON TWO OCCASIONS DURING MY

11   EMPLOYMENT, SHE INTENTIONALLY RUBBED HER BUTTOCKS AGAINST MY

12   GENITALS.  NOW, I UNDERSTAND THAT HE CAN DESCRIBE HER CONDUCT,

13   AND BASED ON HIS DESCRIPTION, THE JURORS MIGHT FIND, WELL,

14   GOSH, THAT'S PRETTY CLEAR WHAT SHE WAS TRYING TO DO THERE.  BUT

15   FOR HIM TO TESTIFY SHE INTENTIONALLY DID SOMETHING, I DON'T

16   KNOW HOW HE COULD DESCRIBE THAT.

17          SO I AGREE WITH MS. MYER WITH RESPECT TO HIM

18   TESTIFYING AS TO HER INTENTIONS OR MOTIVATIONS.  BUT I DO THINK

19   THAT HE CAN STILL TESTIFY AS TO HER ACTUAL CONDUCT.

20          LET ME HEAR FROM YOU ON THAT.

21          MS. MOLDEN:  AND I THINK THAT'S EASILY CURED.  I

22   THINK THAT'S VERY IMPORTANT INFORMATION FOR THE JURY TO HEAR.

23   BUT HE CAN JUST EXPLAIN TO THE JURY AS HE EXPLAINED IT TO ME.

24   AND I THINK THEY'LL GET IT VERY CLEARLY THAT SHE ACTED

25   INTENTIONALLY WITHOUT HIM SAYING SHE ACTED INTENTIONALLY.

1        THE COURT:  ALL RIGHT.  MY INCLINATION THERE WOULD

2   BE, THEN, TO GRANT THE MOTION IN LIMINE WITH RESPECT TO

3   TESTIMONY FROM MR. CARROLL ABOUT MS. HART'S INTENTIONS, BUT TO

4   DENY IT WITH RESPECT TO HER CONDUCT.  HE CAN DESCRIBE HER

5   CONDUCT AS IT WAS CARRIED OUT IN HIS PRESENCE OR TOWARD HIM.

6        ALL RIGHT.  NUMBER FOUR -- AND YOU ALL STOP ME IF

7   THERE'S ANYTHING ELSE THAT YOU ALL WANT TO ADD TO THE RECORD OR

8   CLARIFY OR ANYTHING.

9        NUMBER FOUR IS MR. CARROLL'S SPECULATION ABOUT MS.

10  HART'S OR ANYONE ELSE'S KNOWLEDGE, INTENT, OR OPINIONS.  AND I

11  REALLY DON'T KNOW WHAT WE'RE TALKING ABOUT HERE.  I DON'T KNOW

12  WHAT KNOWLEDGE, INTENT, OR OPINIONS ARE BEING REFERENCED.

13       SO, MS. MYER, IF YOU WOULD TELL ME A LITTLE BIT MORE.

14       MS. MYER:  WELL, WHAT I REALLY WAS JUST TRYING TO

15  ARGUE A COUPLE MINUTES AGO WAS, I WAS TRYING TO ROLL ISSUES

16  THREE AND FOUR TOGETHER.  AND I THINK THAT THE COURT HAS GIVEN

17  THE RULING THAT WE WERE, THAT WE WERE ASKING FOR.  SO I THINK

18  WE'VE RESOLVED ISSUE FOUR.

19       THE COURT:  OKAY.  WELL, I WILL -- AGAIN, I'LL HAVE

20  THE SAME RULING, I GUESS, AS TO THREE.  I'M GOING TO -- MY

21  RULING IS GOING TO BE DENIED AT THIS TIME AS VAGUE, BECAUSE I

22  DON'T KNOW WHAT KNOWLEDGE, INTENT, AND OPINIONS WE'RE TALKING

23  ABOUT.  BUT, CERTAINLY, IF SOMETHING ARISES AT TRIAL THAT YOU

24  THINK YOU NEED TO REDO AN OBJECTION TO, I'M CERTAINLY OPEN TO

25  IT.  I'M ONLY DENYING IT NOW BECAUSE I JUST DON'T KNOW WHAT

39

1   SPECIFIC KNOWLEDGE, INTENT, OR OPINIONS ARE BEING REFERENCED.

2           SO I'LL DENY AS VAGUE.

3           MS. MYER:  OKAY.  YOUR HONOR?

4           THE COURT:  YES.

5           MS. MYER:  ACTUALLY THERE IS ONE OTHER COMPONENT OF

6   ISSUES THREE AND FOUR, AND THAT IS, I UNDERSTAND THE COURT'S

7   RULING AS TO TESTIMONY ABOUT CONDUCT THAT OCCURRED IN MR.

8   CARROLL'S PRESENCE.  WE CERTAINLY UNDERSTAND AND AGREE WITH

9   THAT.

10          WHAT OUR CONCERN WAS, WAS WITH RESPECT TO TESTIMONY

11  BY MR. CARROLL AS TO EVENTS OR CONDUCT THAT MAY HAVE OCCURRED

12  OUTSIDE OF HIS PRESENCE.  AND, AND SO THAT WAS, THAT WAS REALLY

13  THE FOCUS OF OUR CONCERN ABOUT TESTIMONY ON CONDUCT.

14          AGAIN, IF HE'S NOT THERE, HE CAN, HE CAN ONLY

15  SPECULATE AS TO WHAT MAY HAVE HAPPENED.

16          THE COURT:  OKAY.  AND AS YOU SIT HERE, IS THERE A

17  SPECIFIC EXAMPLE TO WHICH YOU'RE REFERRING?  DO YOU HAVE REASON

18  TO BELIEVE THAT HE WILL TRY TO BRING IN TESTIMONY ABOUT

19  SOMETHING THAT HE'S DESCRIBING OUTSIDE OF HIS PRESENCE?

20          MS. MYER:  YEAH.  I BELIEVE THAT HE WILL ATTEMPT TO

21  TESTIFY, FOR EXAMPLE, THAT MS. HART ENTERED TIME IN THE PAYROLL

22  SYSTEM UNDER HIS NAME.  IT'S VERY CLEAR FROM HIS TESTIMONY THAT

23  HE WAS NOT PRESENT, DID NOT SEE HER DO THAT.  BUT HE'S GOING TO

24  TESTIFY, I'M GUESSING, THAT, THAT THAT, THAT SHE PERSONALLY DID

25  THAT.

40

```
 1              THE COURT:  OKAY.  WELL, AND THAT'S KIND OF WHAT I
 2   THOUGHT YOU WERE GETTING AT.  MY FEELING -- AND WE'RE KIND OF
 3   GETTING INTO SOME GREY AREA, BECAUSE, OF COURSE, CIRCUMSTANTIAL
 4   PROOF IS ALLOWED.  AND I TAKE IT HE IS GOING TO TESTIFY THAT,
 5   ONE, SHE SAID TO HIM, IF YOU'D HAVE SEX WITH ME, I'LL APPROVE
 6   MISCELLANEOUS HOURS OR INFLATE YOUR HOURS.
 7              TWO, SHE REPRESENTED TO HIM THAT SHE WAS THE ONE
 8   RESPONSIBLE FOR APPROVING HOURS.
 9              AND, THREE, AFTER HE REFUSED HER SEXUAL ADVANCES, HE
10   SAW THAT HIS HOURS WERE NOT -- HAD BEEN ALTERED IN SOME WAY.
11   IF HE SETS UP A FOUNDATION LIKE THAT, I THINK HE CAN TRY TO
12   ESTABLISH WHAT HAPPENED CIRCUMSTANTIALLY WITHOUT SAYING, I
13   ACTUALLY SAW HER.
14              I'M ASSUMING YOU WOULD BRING OUT ON CROSS THAT, NO,
15   YOU DIDN'T SEE HER DO THAT.  BUT I DON'T THINK THAT THAT
16   PRECLUDES HIM FROM TESTIFYING TO THAT, BECAUSE HE COULD DO SO
17   IN THE MANNER THAT I JUST DESCRIBED AND ESTABLISH IT
18   CIRCUMSTANTIALLY.
19              BUT LET ME HEAR FROM YOU, MS. MOLDEN.
20              MS. MOLDEN:  YES.  I MEAN, THAT'S EXACTLY RIGHT.  I
21   MEAN, HE -- YOU KNOW, I'M THINKING ABOUT ALL THE EVIDENCE THAT
22   HE HAD, CIRCUMSTANTIAL EVIDENCE THAT HE HAS, YOU KNOW, HER
23   SAYING, I ENTERED THIS TIME FOR YOU, AND, YOU KNOW, I HIT MY
24   HEAD AGAINST BOXES AND I STOPPED DOING IT AT SOME POINT, HIS
25   RECEIVING THE PAY, ATA'S RESPONSE TO HIM ONCE THEY FOUND OUT
```

41

1    HAPPENED BEING, RETURN THAT MONEY TO US, I MEAN, I JUST --

2            THE COURT:  DO YOU -- CAN YOU REPRESENT WHETHER HE'S

3    GOING TO SAY THAT HE SAW HER ALTER HIS HOURS?

4            MS. MOLDEN:  YOU KNOW, HE -- I DON'T KNOW ABOUT THAT.

5    I MEAN, I HAVEN'T ASKED HIM WHETHER HE PHYSICALLY SAW HER DO

6    IT.

7            AND THAT'S A GOOD QUESTION TO ASK HIM.  HE'LL BE IN

8    MY OFFICE ALL DAY TOMORROW OR DAY AFTER TOMORROW.  BUT I DON'T,

9    I DON'T EVEN KNOW WHY HE WOULD NEED TO SAY THAT.

10           THE COURT:  WELL, BUT IF HE DID, I THINK THAT WOULD,

11   THAT WOULD CURE THE OBJECTION.

12           MS. MOLDEN:  SURE.  SURE.

13           THE COURT:  BECAUSE HE'S SAYING, I ACTUALLY SAW HER.

14   NOW, HOW HE WOULD DESCRIBE THAT, I DON'T KNOW.  AND I'M SURE HE

15   WOULD BE SUBJECT TO SOME SERIOUS CROSS-EXAMINATION THERE.  BUT

16   MY POINT IS THAT I WOULD NOT PRECLUDE HIM FROM OFFERING THAT

17   TESTIMONY BECAUSE I DON'T FIND THAT SPECULATION WOULD BE THE

18   ONLY WAY THAT HE COULD SUPPORT IT.

19           IT SOUNDS TO ME LIKE HE HAS ALREADY MADE A GOOD

20   ARGUMENT FOR CIRCUMSTANTIAL SUPPORT, THAT THAT'S WHAT HAPPENED.

21   AND SO I DON'T KNOW WHAT BASIS I WOULD HAVE TO, TO GRANT A

22   MOTION LIKE THAT EXCEPT TO SAY, WELL, THERE HASN'T BEEN ANY

23   PROOF THAT HE ACTUALLY WITNESSED IT WITH HIS OWN EYES.  AND I

24   DON'T THINK THAT'S REQUIRED UNDER THE LAW.

25           SO AT THIS TIME, I'M GOING TO GO AHEAD AND DENY THAT

42

1    MOTION IN LIMINE.

2              MS. MOLDEN:  IS THAT NUMBER FOUR?

3              THE COURT:  THAT WAS NUMBER FOUR.

4              ALL RIGHT.  EVIDENCE OR ARGUMENT -- AND THIS IS

5    NUMBER FIVE -- THAT PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED BY

6    ATA.  I THINK WE HAVE COVERED THIS IN OUR DISCUSSION ON THE

7    VOIR DIRE OBJECTIONS.  I WOULD GRANT THAT.

8              MS. MOLDEN, IS THERE ANYTHING ELSE THAT YOU WANT TO

9    SAY THERE?

10             MS. MOLDEN:  NO.  WE DON'T INTEND TO MAKE THAT

11   ARGUMENT.

12             THE COURT: ALL RIGHT.  MS. MYER, YOU MIGHT HAVE TO

13   HELP ME OUT WITH NUMBER SIX.  THIS IS EVIDENCE OR ARGUMENT THAT

14   THE PLAINTIFF WAS SUBJECTED TO QUID PRO QUO SEXUAL HARASSMENT

15   OR SEXUAL HARASSMENT WITH NO TANGIBLE ADVERSE EMPLOYMENT

16   ACTION.

17             MS. MYER:  SO THERE WERE INITIALLY TWO SEXUAL

18   HARASSMENT CLAIMS.

19             THE COURT:  RIGHT.

20             MS. MYER:  AND WE SIMPLY WANTED THE CONFIRMATION

21   THAT, TO THE EXTENT THAT THE EVIDENCE IS, IS DIFFERENT AS TO

22   THE ONE ON WHICH SUMMARY JUDGMENT WAS GRANTED AND THE ONE ON

23   WHICH WE ARE GOING TO TRIAL, THAT THERE WOULD NOT BE EVIDENCE

24   PRESENTED THAT ONLY GOES TO THE ONE ON WHICH SUMMARY JUDGMENT

25   WAS GRANTED.  SO THAT'S ALL WE'RE ASKING.

43

1           THE COURT:  OKAY.  TWO CONCERNS THERE.

2           FIRST, IT SEEMS TO ME THAT, IN THE WAY THAT YOU'VE

3    WORDED THE MOTION, THAT QUID PRO QUO IS SOMEHOW LUMPED IN WITH

4    COUNT ONE THAT WAS RULED OUT ON SUMMARY JUDGMENT, WHICH WAS

5    SEXUAL HARASSMENT BASED ON HOSTILE WORK ENVIRONMENT.  AND I'M

6    NOT SURE WHAT THE BASIS IS FOR ARGUING THAT QUID PRO QUO ONLY

7    GOES TO THAT COUNT AND NOT THE OTHER.

8           AND THEN MY SECOND POINT OF SOME CONFUSION IS, I

9    DON'T KNOW HOW WE DEFINE CERTAIN CONDUCT AS JUST BEING ATTACHED

10   TO ONE COUNT AND NOT THE OTHER.  SO YOU MAY HAVE TO HELP ME

11   WITH AN EXAMPLE THERE, BECAUSE, TO SOME EXTENT, THERE'S AN

12   ARGUMENT TO BE MADE THAT THE CONDUCT GOES TO BOTH OF THOSE

13   COUNTS, EVEN THOUGH I UNDERSTAND THAT ONE OF THOSE COUNTS,

14   HOSTILE WORK ENVIRONMENT, AGAIN, WAS TAKEN OUT ON SUMMARY

15   JUDGMENT.

16          MS. MYER:  I THINK THE REASON I USED THE QUID PRO QUO

17   LANGUAGE IS BECAUSE THAT WAS WHAT WAS USED IN THE COMPLAINT FOR

18   THE COUNT THAT -- ON WHICH WE GOT SUMMARY JUDGMENT.  SO THAT'S

19   WHY I HAVE THAT IN THERE.

20          THE -- I THINK THAT IT, IT MAY BE DIFFICULT, FRANKLY,

21   FOR THE COURT TO RULE ON THIS ONE WITHOUT -- UNTIL WE ARE AT

22   TRIAL.  SO MY REASONING IN RAISING THE ISSUE ON THE MOTION IN

23   LIMINE WAS SIMPLY TO BRING IT TO THE COURT'S ATTENTION SO THAT

24   WE'RE MINDFUL OF IT AS WE PROCEED THROUGH TRIAL.  BUT IT MAY BE

25   A DIFFICULT ONE TO, TO DEAL WITH TODAY BEFORE WE GET TO TRIAL.

44

1          MS. MOLDEN:  I WON'T EVEN KNOW HOW TO DEAL WITH THAT

2     AT TRIAL.  I MEAN, THIS WOMAN ASKED FOR SEX, YOU KNOW, PRETTY

3     MUCH EVERY TIME SHE SAW HIM.  AND IT WAS ALWAYS, YOU MIGHT GET

4     THESE THINGS, TOO.  IT WASN'T, ONLY IF YOU DO THIS PARTICULAR

5     ACT, THIS IS A PARTICULAR BENEFIT.  IT WASN'T LIKE THAT.  SO

6     IT'S ALL THE SAME.

7          AND SO, I MEAN, I DON'T WANT TO VIOLATE ANY ORDER OR

8     WHATEVER, BUT I WOULDN'T KNOW HOW TO DO WHAT YOU'RE ASKING,

9     EVEN AT TRIAL.

10          THE COURT:  TO SEPARATE THE CONDUCT FOR THE TWO

11     PURPOSES OF SEXUAL -- UNDER SEXUAL HARASSMENT?

12          MS. MOLDEN:  SURE.

13          THE COURT:  I DON'T KNOW, EITHER.

14          OKAY.  AT THIS TIME, I'M GOING TO DENY.  BUT AS MS.

15     MYER HAS POINTED OUT, THERE MAY BE CERTAIN THINGS THAT COME UP

16     AT TRIAL WHERE THE DISTINCTION IS MORE CLEARLY MADE.  AND SO IF

17     -- SO, CERTAINLY, OBJECT AT THAT TIME, AND I'LL RULE ON IT.

18          BUT I WAS TRYING TO THINK OF AN EXAMPLE, IN REVIEWING

19     THIS MOTION IN LIMINE, THAT WENT JUST TO COUNT TWO AND NOT TO

20     COUNT ONE.  AND I JUST COULDN'T COME UP WITH ONE.  SO I'LL DENY

21     AT THIS TIME.

22          ALL RIGHT.  NUMBER SEVEN GOES TO COMMUNICATIONS

23     BETWEEN MR. CARROLL AND MS. HART AFTER MR. CARROLL'S

24     RESIGNATION.  OF COURSE, THIS WAS DISCUSSED SOMEWHAT IN THE

25     CONTEXT OF THE SUMMARY JUDGMENT R&R.  AND I THINK JUDGE BRILL

45

1  CITED THE HENSLEY CASE -- HULSEY CASE, I'M SORRY, REGARDING THE

2  TOTALITY OF CIRCUMSTANCES ANALYSIS TO SHOW THAT, IN CERTAIN

3  RESPECTS, THINGS POST-RESIGNATION ARE STILL RELEVANT.  AND I

4  DON'T KNOW OF ANY AUTHORITY THAT LIMITS THAT ANALYSIS TO JUST

5  SUMMARY JUDGMENT.

6          SO IT WOULD BE MY POSITION TO FOLLOW THAT SAME

7  REASONING AT TRIAL.  AND UNLESS I'M PROVIDED WITH A SPECIFIC

8  REASON FOR RULING OTHERWISE, TO FIND THAT THE COMMUNICATIONS

9  AND WHAT WAS GOING ON POST-RESIGNATION WOULD STILL BE

10 ADMISSIBLE.

11         BUT, MS. MYER, LET ME HEAR FROM YOU ON WHY IT SHOULD

12 NOT BE.

13         MS. MYER:  WELL, YOUR HONOR, WE HAVE SOMEBODY WHO

14 WORKED FOR ATA FOR A LITTLE UNDER THREE MONTHS.  AND WE'VE GOT

15 E-MAILS THAT CONTINUED FOR ALMOST TWO MONTHS AFTER HE RESIGNED.

16         AND SO, WHILE I THINK -- I ADMIT IT'S DIFFICULT TO

17 MAKE AN ARGUMENT THAT THE E-MAILS IMMEDIATELY POST-EMPLOYMENT

18 MIGHT NOT, MIGHT NOT BE PERTINENT, YOUR HONOR, ONCE WE PROGRESS

19 FROM HIS RESIGNATION ON APRIL 24TH INTO DATES IN MAY AND JUNE,

20 THESE ARE NOT E-MAILS THAT ARE IMMEDIATELY FOLLOWING THE

21 EMPLOYMENT.  THESE ARE NOT E-MAILS THAT EASILY RELATE BACK TO

22 THINGS THAT HAPPENED DURING THE EMPLOYMENT.  THESE ARE SIMPLY

23 E-MAILS THAT, I GUESS, FOR LACK OF A BETTER DESCRIPTION, LOOK

24 ANNOYING.

25         BUT THEY ARE NOT, THEY ARE NOT IMMEDIATELY RELATED TO

1   THE EMPLOYMENT DATES.  AND SO I WOULD, I WOULD ASK THE COURT

2   TO, TO RULE THAT THE E-MAILS THAT ARE DATED, STARTING BY EARLY

3   MAY AND GOING INTO JUNE, ARE SO TANGENTIAL THAT THEY SHOULD NOT

4   BE CONSIDERED RELEVANT.  AND THEY POTENTIALLY ARE, ARE

5   PREJUDICIAL TO ATA, BECAUSE THEN WE GET INTO ACTUALLY WHAT I'VE

6   DEALT WITH IN ISSUE EIGHT, WHICH IS LANGUAGE THAT APPEARS TO BE

7   THREATENING.

8          SO THE FURTHER WE GET FROM THE DATE OF MR. CARROLL'S

9   RESIGNATION, THE LESS PERTINENT THE E-MAILS ARE.

10         THE COURT:  NOW, IS THAT ARGUMENT BASED SOLELY ON HOW

11  MUCH TIME HAS ELAPSED?  OR ALSO THE SUBJECT MATTER OF THE

12  E-MAILS?  IS IT YOUR POSITION THAT THE SUBJECT OF THOSE

13  PARTICULAR E-MAILS IN EARLY MAY AND JUNE HAD NOTHING TO DO WITH

14  HIS EMPLOYMENT THERE?  OR THAT'S NOT WHAT YOU'RE ARGUING.

15  YOU'RE SIMPLY ARGUING THAT, EVEN IF IT DID, BECAUSE A CERTAIN

16  AMOUNT OF TIME HAD ELAPSED AFTER HE LEFT, THAT THEY SHOULD NOT

17  BE ADMISSIBLE.

18         MS. MYER:  I'M REALLY SAYING BOTH.  THE FURTHER WE

19  GET IN TIME, THE MORE -- THE HARDER IT IS TO SAY THAT THE

20  LANGUAGE IN THESE E-MAILS HAS ANY CONNECTION WHATSOEVER WITH

21  WHAT'S GOING ON AT ATA, WITH HER WORK ENVIRONMENT.

22         THE COURT:  SO WHAT WERE THOSE E-MAILS ABOUT AT THAT

23  POINT?  WHAT'S AN EXAMPLE OF THE KIND OF THINGS THAT SHE WAS

24  SAYING?

25         MS. MYER:  SO, FOR EXAMPLE -- WELL, EVEN GOING TO

47

1    APRIL 29, SHE'S SAYING, I'VE SEEN A COUPLE NBA PLAYERS, TOO.

2              HAS NOTHING TO DO WITH WORK.

3              THE COURT:  NOW, THAT WOULD HAVE BEEN ONLY FIVE DAYS

4    AFTER HE RESIGNED.  SO THERE YOU'RE NOT MAKING THE

5    TIME ARGUMENT, YOU'RE MAKING THE --

6              MS. MYER:  HAS NOTHING TO DO WITH WORK.  YES.

7              I'M SORRY.  I DID NOT MEAN TO INTERRUPT THE COURT.

8              THE COURT:  OKAY.  NO, NO, THAT'S OKAY.

9              MS. MYER:  SO THAT'S THAT ONE.  AND THEN WE GET TO

10   APRIL 27, AGAIN, NOT VERY LONG AFTER HE RESIGNED, BUT NOTHING

11   TO DO WITH WORK.  I CAN'T WAIT TO SEE *RAY DONOVAN* ON SHOWTIME.

12   HE'S THE CLEANER, LIKE HARVEY KEITEL WAS IN *PULP FICTION.*

13             NOTHING TO DO WITH ANYTHING.

14             ANOTHER ONE, THIS IS SO FUNNY, ALSO APRIL 27.

15             MS. MOLDEN:  MAY I --

16             THE COURT:  WELL, LET ME LET MS. MYER FINISH.

17             MS. MYER:  MAY 3RD, WON'T EVEN WEAR UNDERWEAR.

18             DOESN'T SAY ANYTHING ABOUT ATA.  IT WAS SENT FROM HER

19   PERSONAL E-MAIL ADDRESS.

20             SO, AND IT IS TEN DAYS AFTER HE'S RESIGNED.

21             THE COURT:  NOW, IS IT YOUR POSITION THAT, IN ORDER

22   TO -- FOR HIM TO SUBSTANTIATE HIS CLAIMS, SHE HAS TO MAKE

23   MENTION OF ATA?

24             MS. MYER:  WELL, IT WOULD BE MY POSITION THAT, THAT

25   THE E-MAILS SHOULD HAVE LANGUAGE IN THEM THAT SOMEHOW PERTAINS

48

1  TO WORK.  AND SO AN E-MAIL THAT COMES FROM HER AFTER HE'S LEFT,

2  AFTER HE'S RESIGNED, THAT COMES FROM HER PERSONAL E-MAIL

3  ADDRESS AND THAT DOES NOT MAKE REFERENCE TO WORK, DOESN'T SEEM

4  TO HAVE ANY CONNECTION WITH THE FACT THAT SHE'S EMPLOYED BY

5  ATA.

6          SO THERE DOESN'T APPEAR TO BE ANY REASON TO WHY THIS

7  WOULD BE PERTINENT, WHY IT WOULD GET AROUND A HEARSAY

8  CONSIDERATION.  AND IT POTENTIALLY IS PREJUDICIAL UNDER RULE

9  403.

10          THE COURT:  OKAY.  MS. MOLDEN?

11          MS. MOLDEN:  YOUR HONOR, THIS WHOLE CASE IS ABOUT HER

12  MAKING COMMENTS THAT HAVE NOTHING TO DO WITH WORK.  ON MAY 7TH,

13  FOR EXAMPLE, 2013, SHE WRITES SHE'S -- TO ME, EVERYTHING THAT

14  MS. HART WROTE TO MR. CARROLL IN HER CAPACITY AS AN ATA AGENT

15  IS RELEVANT.  SO AS LONG AS SHE WAS EMPLOYED WITH ATA AND

16  COMMUNICATING WITH REGINALD CARROLL ASKING FOR SEX, ASKING HIM

17  TO COME BACK TO WORK, PROMISING TO PUT IN TIME FOR HIM IF HE'D

18  JUST COME BACK TO WORK AND GIVE HER SEX, THE QUID PRO QUO

19  CONTINUED EVEN AFTER HE LEFT.

20          SO, FOR EXAMPLE, IF YOU LOOK AT THE E-MAIL DATED

21  TUESDAY, MAY 7, IT'S BATES STAMPED 000075, AND IT'S FROM DONNA

22  HART AT ATA RETAIL TO REGINALD CARROLL.  AND THE SUBJECT LINE

23  IS HIS RESIGNATION.  AND SHE SAYS, THAT IT DID IS WHAT I MEAN,

24  I WILL NOT PUT IN ANY MORE TIME IN YOUR PAYROLL AFTER I FOUND

25  THE BOXES AT 364.

1          SHE'S STILL TALKING ABOUT PUTTING IN TIME, PAYROLL.

2    THIS IS MAY 7.

3          SO AS TO PUTTING IN SOME ARBITRARY DATE RESTRICTION,

4    I THINK THAT JUST DOESN'T MAKE SENSE.  I'VE MADE NOTES OF

5    E-MAILS THAT GO, YOU KNOW, GO ON AND ON AFTER HE LEFT.  AND,

6    AGAIN, THIS IS DATED AS LATE AS MAY 7, 2013.  AND SO THE WHOLE

7    CASE IS ABOUT HER TALKING TO HIM ABOUT THINGS THAT ARE NOT WORK

8    RELATED.  THAT'S WHY WE'RE HERE.  IF SHE LIMITED HER

9    DISCUSSIONS TO WORK-RELATED TOPICS, WE WOULDN'T BE HERE AT ALL.

10          SO I DON'T KNOW HOW YOU EXCLUDE TESTIMONY OR EVIDENCE

11    BASED ON THE ARBITRARY DATE RESTRICTION WHEN SHE, IN FACT, IS

12    STILL DOING THE SAME THING UP UNTIL MR. CARROLL HAD TO REPORT

13    HER.

14          MS. MYER:  MAY I?

15          THE COURT:  YES, YOU MAY.

16          MS. MYER:  WELL, I THINK THAT WE'VE GOT A SITUATION

17    WHERE, FIRST OF ALL, SHE -- THESE ARE POST-EMPLOYMENT.

18          SECONDLY, THESE ARE E-MAILS THAT SHE SENT FROM HER

19    PERSONAL E-MAIL ADDRESS.  SO SHE IS NOT, NOT IN THE PERSONA OF

20    AN ATA EMPLOYEE WHEN SHE IS SENDING E-MAILS FROM HER PERSONAL

21    E-MAIL ADDRESS.  THE -- THESE ARE E-MAILS THAT DO NOT --

22    ALTHOUGH THE ONE MS. MOLDEN READ OFF DOES MAKE A REFERENCE BACK

23    TO WORK, MANY OF THESE E-MAILS DO NOT MAKE ANY REFERENCE

24    WHATSOEVER TO WORK.  THEY ARE SIMPLY, SIMPLY CRUDE E-MAILS THAT

25    MAYBE MAY MAKE SEXUAL REFERENCES, BUT NOT REFERENCES TO WORK.

50

1         AND SO WE'RE IN A SITUATION WHERE THEY ARE HIGHLY

2   PREJUDICIAL.  AND THE JURY MAY NOT UNDERSTAND THAT, AT THIS

3   POINT, ATA CANNOT BE -- SHOULD NOT BE HELD RESPONSIBLE FOR

4   CONDUCT THAT IS OCCURRING AFTER HE HAS RESIGNED.  SO --

5         THE COURT:  BUT SHE'S --

6         MS. MYER:  MAYBE -- I'M SORRY.

7         THE COURT:  SHE STILL -- AND THIS GOES BACK TO THE

8   POINT THAT WE WERE TAKING UP BEFORE, BECAUSE YOU'RE FOCUSING ON

9   THE FACT OF HIS STATUS, THAT HE'S NO LONGER AN ATA EMPLOYEE.

10  BUT I THINK THIS IS -- OUR ANALYSIS IS FOCUSED ON HER STATUS AS

11  SOMEONE WHO'S STILL ACTING ON BEHALF OF ATA, AND ON BEHALF OF

12  ATA, SHE'S STILL TELLING HIM, IF YOU DO CERTAIN THINGS, IF YOU

13  COME BACK TO WORK, FOR INSTANCE, WHICH IS WHY I UNDERSTAND THAT

14  SHE DIDN'T STOP PAYING HIM, PERHAPS, FROM WHAT YOU ALL TOLD ME

15  BEFORE, THAT CERTAIN THINGS CAN CONTINUE, SO SHE STILL SEES

16  HERSELF AS ACTING ON BEHALF OF ATA.  AND SO I'M NOT SEEING ANY

17  BASIS FOR WHY WE SHOULD JUST STOP AT A PARTICULAR TIME AND SAY,

18  THIS SHOULD NO LONGER BE ADMISSIBLE.

19        AND THE FACT THAT SHE'S USING HER OWN PERSONAL DEVICE

20  RATHER THAN A WORK DEVICE, I'M NOT AWARE OF ANY AUTHORITY THAT

21  SAYS THAT THAT'S A REASON THAT SOMETHING SHOULDN'T BE INCLUDED

22  IN A SEXUAL HARASSMENT CASE.

23        MS. MOLDEN:  AND MAY I SPEAK TO THAT, WHAT YOU WERE

24  JUST POINTING OUT?  SHE USED HER E-MAIL ADDRESSES

25  INTERCHANGEABLY.  IT DIDN'T MATTER.  SO THE SAME DAY, MAY 2ND,

51

1   2013, SHE WRITES HIM FROM HER DONNA HART PERSONAL E-MAIL

2   ADDRESS.  AND SHE SAYS -- THE SUBJECT LINE IS, SHE CAN'T STOP

3   ME.  SHE SAYS, SHE MIGHT BE TRYING TO STOP ME FROM ENTERING

4   TIME IN YOUR PAYROLL, BUT ONLY IN HER WILDEST DREAMS, ET

5   CETERA, ET CETERA.  SO THE E-MAIL ADDRESS SHE SENT IT FROM

6   DOESN'T MATTER.

7           SO WHEN SHE WAS E-MAILING HIM FROM HER DONNA HART

8   PERSONAL E-MAIL ADDRESS, SHE TALKED ABOUT WHAT SHE WAS GOING TO

9   DO.  SHE TALKED ABOUT ATA BUSINESS SOMETIMES.  I MEAN, IT JUST

10  -- I DON'T KNOW WHY THERE'S A DISTINCTION.  SHE DIDN'T

11  DISTINGUISH BETWEEN THE TWO.

12          MS. MYER:  WELL, WE'VE GOT, WE'VE GOT E-MAILS, WE'VE

13  GOT E-MAILS THAT MAKE DIRECT REFERENCE TO WORK.  AND MS. MOLDEN

14  HAS READ SOME OF THOSE OFF.  BUT THERE ARE ALSO ONES THAT MAKE

15  NO REFERENCE WHATSOEVER TO WORK.  THEY SIMPLY ARE STATEMENTS

16  THAT COULD BE INTERPRETED AS SEXUAL.  BUT THEY DO NOT SAY

17  ANYTHING ABOUT WORKING.  THEY DO NOT SAY ANYTHING ABOUT, COME

18  BACK TO WORK.  THEY SIMPLY SAY, EXAMPLE, GOOD NIGHT, MR.

19  HOTTIE.  THIS IS, THIS IS SO FUNNY.  AS I READ EARLIER, WON'T

20  EVEN WEAR UNDERWEAR.  THIS IS THE ENTIRE MESSAGE.  SO THERE'S

21  NOTHING REFERRING BACK TO WORK.

22          AND SO I THINK THAT, ALTHOUGH I, I ACKNOWLEDGE WHAT

23  THE COURT IS SAYING ABOUT E-MAILS THAT WERE SENT AFTER MR.

24  CARROLL RESIGNED BUT THAT MAY MAKE REFERENCE BACK TO WORK AT

25  ATA, I'M TALKING RIGHT NOW ABOUT E-MAILS THAT MAKE NO REFERENCE

52

1    WHATSOEVER DIRECTLY BACK TO WORKING FOR ATA. THEY ARE JUST

2    E-MAILS THAT CONTAIN SOMETIMES UNINTELLIGIBLE STATEMENTS AND

3    SOMETIMES CRUDE STATEMENTS.

4              THE COURT: WELL, I THINK -- I'M GOING TO DENY THAT.

5    I THINK THE -- UNDER THE TOTALITY OF THE CIRCUMSTANCES

6    ANALYSIS, THAT THE COMMUNICATIONS FROM HER IN TOTALITY WERE

7    MADE AS AN AGENT ON BEHALF OF ATA, REGARDLESS OF THE SPECIFIC

8    CONTENTS OF EACH ONE OF THOSE E-MAILS. AND SO IF THERE IS A

9    PARTICULAR E-MAIL THAT YOU JUST REALLY THINK SUPPORTS THE

10   ARGUMENT THAT YOU'RE MAKING, I'D BE HAPPY TO TAKE THAT

11   PARTICULAR E-MAIL OR THOSE PARTICULAR E-MAILS UNDER

12   CONSIDERATION.

13             BUT AT THIS TIME, I'M GOING TO DENY THE MOTION IN

14   LIMINE. AND, AGAIN, THAT'S MY LOOKING AT THESE UNDER THE

15   TOTALITY OF THE CIRCUMSTANCES VIEW.

16             OKAY. AND THAT WOULD, THAT WOULD COVER MOTIONS IN

17   LIMINE PARTS SEVEN AND EIGHT, UNLESS THERE ARE, AGAIN, SOME

18   SPECIFIC ONES UNDER EIGHT THAT GO TO THREATS MADE BY MS. HART

19   THAT YOU WANT THE COURT TO TAKE UP AT THIS TIME.

20             MS. MYER: YES, YOUR HONOR. THERE ARE THREE, THREE

21   E-MAILS THAT THE COURT JUST SET UP, THREATS.

22             THE COURT: OKAY.

23             MS. MYER: ONE IS PLAINTIFF'S EXHIBIT 32, WHICH IS

24   BATES 80. AND THE TOTALITY OF THE E-MAIL SENT FROM HER

25   PERSONAL E-MAIL ADDRESS, IT'S DATED MAY 29. SO IT'S MORE THAN

53

1    A MONTH AFTER MR. CARROLL RESIGNED.  IF YOU SHOW ANY OF MY

2    E-MAILS TO ANYONE, I REMEMBER YOUR TAGS.  AND YOU MIGHT GET A

3    VISIT FROM THE RUSSIAN.  DO NOT -- EXCUSE MY LANGUAGE -- THE F

4    WORD -- WITH ME.

5            THE SECOND ONE IS MAY 30, ALSO FROM THE PERSONAL

6    E-MAIL ADDRESS.  BETTER NOT.  I PROMISE I WILL GET OTHER PEOPLE

7    INVOLVED, AND IT WILL GET UGLY.

8            AND THEN THE --

9            MS. MOLDEN:  I'M SORRY.  WHAT WAS THE BATES --

10   PLAINTIFF'S EXHIBIT NUMBER ON THE SECOND ONE YOU MENTIONED?

11           MS. MYER:  I'M SORRY.  THAT'S BATES 52.  THAT WOULD

12   BE PLAINTIFF'S EXHIBIT 34.

13           MS. MOLDEN:  OKAY.  THANK YOU.

14           MS. MYER:  AND THEN THE THIRD ONE --

15           THE COURT:  I'M SORRY.  THOSE NUMBERS ONE MORE TIME.

16   THE BATES AND THE EXHIBIT.  WAS IT PLAINTIFF'S EXHIBIT 34?

17           MS. MYER:  YES.  PLAINTIFF'S EXHIBIT 34, WHICH IS

18   BATES 52.

19           THE COURT:  THANK YOU.

20           MS. MYER:  AND THE FIRST ONE THAT I SAID WAS

21   PLAINTIFF'S EXHIBIT 32, BATES 80.

22           THE COURT:  OKAY.

23           MS. MYER:  AND THEN THERE IS ONE MORE, IF THE COURT

24   COULD JUST BEAR WITH ME ONE MOMENT.

25           THE COURT:  SURE.

1           MS. MYER:  THIS IS BATES 81, PLAINTIFF'S 33.  IT'S AN

2     INCOMPLETE E-MAIL, SO I CAN'T TELL WHICH E-MAIL ADDRESS IT CAME

3     FROM.

4           AND THAT'S ANOTHER ISSUE THAT WE'VE RAISED IN OUR

5     MOTION.  BUT THE TOTALITY OF THE MESSAGES, YOU WILL MEET YOUR

6     MAKER, YOU BETTER PUT A STOP TO THIS -- EXCUSE MY LANGUAGE --

7     THIS BS, GROWN MEN TRYING TO EMBARRASS AN OLDER WOMAN, GET OVER

8     IT.

9           THE COURT:  HOW CAN YOU ARGUE THOSE AREN'T RELEVANT,

10    THOUGH.  I MEAN, SHE IS MAKING THREATS ABOUT HIS REPORTING OR

11    TAKING ACTION ON THE VERY SUBSTANCE OF THIS LAWSUIT.  I MEAN,

12    THESE, REGARDLESS OF WHEN THEY HAPPENED OR WHAT DEVICE WAS

13    USED, IT SOUNDS LIKE THEY ARE COMMUNICATING ABOUT THE POSSIBLE

14    ACTIONS HE WILL TAKE BASED ON HER CONDUCT.  THAT'S THE HEART OF

15    THIS LAWSUIT.

16          MS. MYER:  WELL, WE DON'T ACTUALLY KNOW WHAT THEY ARE

17    COMMUNICATING ABOUT, BECAUSE WHATEVER E-MAILS MR. CARROLL MAY

18    HAVE SENT TO HER HAVE NEVER BEEN PRODUCED.  SO WE DON'T KNOW.

19          SO WE'VE GOT THESE THREE THREATS THAT COME IN A

20    VACUUM.  THEY -- ONE OF THEM, THIS LAST ONE I READ, DOES NOT

21    EVEN HAVE A DATE ON IT.  SO I DON'T KNOW WHEN IT WAS SENT.  BUT

22    THEY ARE SENDING IT -- THEY APPEAR TO BE SENT IN A VACUUM.  AND

23    WE DON'T, WE DON'T KNOW WHAT THE THOUGHT PROCESS WAS BEHIND

24    THEM.

25          WE SIMPLY KNOW THAT MS. HART ALLEGEDLY SENT THEM TO

55

1    MR. CARROLL FROM HER PERSONAL E-MAIL SOMETIME OVER A MONTH

2    AFTER HE RESIGNED.  SO, CANDIDLY, MY SUSPICION IS THAT THERE IS

3    -- WAS SOME SORT OF E-MAIL EXCHANGE THAT WE HAVE NOT -- WE'VE

4    ONLY SEEN ONE SIDE OF.  BUT WE DON'T KNOW.

5              THE COURT:  OKAY.  UNDERSTOOD.

6              MS. MOLDEN?

7              MS. MOLDEN:  ALL OF THESE E-MAILS ARE EXTREMELY

8    RELEVANT.  SO, FOR EXAMPLE, AS TO PLAINTIFF'S EXHIBIT 32, SHE

9    SAYS, IF YOU SHOW MY E-MAILS TO ANYONE, I REMEMBER YOUR TAGS.

10             WELL, WHY DOES SHE HAVE HIS TAGS?  BECAUSE SHE WAS

11   HIS BOSS, AND IT WAS PART OF THE APPLICATION PROCESS.  AND

12   SHE'S THREATENING HIM WITH RESPECT TO WHAT HE IS TRYING TO DO.

13   AND THAT IS, OR ATTEMPTING TO DO, OR THREATENING TO DO, AND

14   THAT IS TO REPORT HER TO ATA.  AND IT GOES TO THE HEART OF

15   PLAINTIFF'S CLAIMS.

16             IT'S THE SAME WITH 34.  ALL OF THIS INFORMATION THAT

17   SHE'S TELLING HIM ABOUT, I MEAN, SHE GAINED ALL THIS

18   INFORMATION THROUGH HER EMPLOYMENT.  AND HE'S TRYING TO TAKE

19   STEPS, YOU KNOW.  WOULD HAVE BEEN GREAT IF HE DID IT EVEN

20   SOONER, BUT HE IS TRYING TO TAKE STEPS TO LET SOMEONE AT ATA

21   KNOW ABOUT HER.  AND THIS IS WHAT HE'S GETTING IN RESPONSE TO

22   THAT.

23             HE STARTED TRYING TO, OR HE, I GUESS, SOMEHOW IMPLIED

24   THAT HE WOULD REPORT HER, EVEN DURING HIS EMPLOYMENT THERE.

25   AND SHE THREATENED HIM EVEN THEN.

56

1        AND SO THIS IS JUST A CONTINUATION OF WHAT WAS GOING

2   ON WHILE HE WORKED THERE.  SO, I MEAN, THAT'S OUR CASE.  AND

3   IT'S JUST NOT HEARSAY.

4        THE COURT:  I MEAN, A LOT OF THIS HONESTLY GOES BACK

5   TO SPOLIATION, BECAUSE I THINK MS. MYER DOES RAISE A GOOD POINT

6   THAT, TO SOME EXTENT, WE DON'T KNOW THE FULL PICTURE OF WHAT

7   WAS GOING ON BECAUSE PERHAPS WE ONLY DO HAVE ONE SIDE OF THE

8   E-MAILS.  BUT, AGAIN, WE TOOK THIS UP IN SPOLIATION.  THE COURT

9   DECIDED NOT TO EXCLUDE THEM.

10        MR. CARROLL HAS A LOT TO EXPLAIN.  HE IS GOING TO BE

11   SUBJECT TO A LOT ON CROSS-EXAMINATION, WHY SHOULD WE TAKE YOUR

12   WORD, WHY DON'T WE SEE YOUR PORTION OF THE E-MAILS.  BUT I

13   DON'T THINK ANYTHING HAS BEEN PRESENTED TO EXCLUDE THEM OR

14   MOTION TO LIMINE THEM OUT.

15        SO I AM GOING TO DENY THE MOTION IN LIMINE WITH

16   RESPECT, AGAIN, TO PARTS SEVEN AND EIGHT.

17        BUT THAT DOES TAKE US TO PART NINE NOW, WHICH IS THE

18   INCOMPLETE EXHIBITS.

19        AND, MS. MYER, I TAKE IT THAT YOU MEAN EXACTLY WHAT

20   WE'VE BEEN DISCUSSING IN REFERRING TO THE E-MAILS, THE

21   NUMBERING, THE KIND OF WEIRD DATING OF SOME OF THEM AND SO

22   FORTH.  SO GO AHEAD AND ELABORATE ON YOUR MOTION IN LIMINE

23   THERE.

24        MS. MYER:  THANK YOU.

25        YES.  SO PLAINTIFF'S EXHIBITS 9, 10, 11, 14, 15, 16,

57

1    17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 33, 34, 35,

2    AND 37 ALL, ALL HAVE PORTIONS OF E-MAILS INTERSPERSED WITH WHAT

3    APPEAR TO BE COMPLETE E-MAILS.  AND SO WE'RE LEFT WITH TRYING

4    TO FIGURE OUT WHAT'S NOT SAID, WHICH, WHICH WE CONTEND CAN

5    RESULT IN PREJUDICE TO ATA BECAUSE WE DON'T HAVE THE FULL

6    PICTURE.

7            NORMALLY THE SOLUTION, OF COURSE, WOULD BE TO SIMPLY

8    REQUIRE THAT THE JURY SEE THE ENTIRE DOCUMENT SO THAT THE JURY

9    CAN SEE THE FULL CONTEXT.  BUT HERE WE CAN'T DO THAT BECAUSE

10   THE E-MAILS DON'T EXIST.  THEY'VE BEEN SPOLIATED.  SO THERE IS

11   NO WAY TO, TO TELL THE JURY WHAT'S NOT ON THOSE PAGES, WHAT THE

12   OTHER PART OF EACH OF THOSE E-MAILS IS.

13           IT SEEMS TO ME THAT THE -- IT IS PREJUDICIAL TO ATA

14   TO HAVE A PARTIAL E-MAIL PRESENTED TO THE JURY WITHOUT, WITHOUT

15   THE CONTEXT AND WITHOUT THE REST OF THE E-MAIL BEING AVAILABLE.

16           THE COURT:  ALL RIGHT.  MS. MOLDEN?

17           MS. MOLDEN:  OF COURSE, MR. CARROLL TESTIFIED THAT,

18   WHEN HE PRINTED THESE E-MAILS, HE SIMPLY WENT TO -- WELL, LET

19   ME SAY, FIRST OF ALL, THESE ARE TEXT MESSAGES.  THEY ARE NOT

20   E-MAILS.  AND THAT'S WHY THEY APPEAR SO DIFFERENT.  SO HE

21   FORWARDED THESE TEXT MESSAGES TO HIS COMPUTER AND THEN JUST

22   CHECKED THE BOX, CHECKED EACH BOX AS TO WHICH ONES HE WANTED TO

23   PRINT, BECAUSE HE HAD A NUMBER OF MESSAGES THERE.  AND HE

24   CHECKED THE ONES THAT HE WANTED TO PRINT.  AND THEY PRINTED IN

25   THIS FORMAT.

58

1          SO MR. CARROLL'S TESTIMONY IS THAT THEY ARE NOT

2     INCOMPLETE.  MS. HART SENT MESSAGE AFTER MESSAGE AFTER MESSAGE

3     TO HIM, WHETHER SHE GOT A RESPONSE OR NOT.  AND SO THE RULES OF

4     EVIDENCE REQUIRE AUTHENTICATION, WHICH JUST SAYS THAT YOU HAVE

5     A WITNESS WHO TESTIFIES THAT THE DOCUMENT IS INDEED WHAT IT

6     PURPORTS TO BE.

7          IT DOESN'T HAVE -- IT DOESN'T REQUIRE THE WITNESS TO

8     TESTIFY ABOUT ANYTHING EXCEPT THAT THIS WITNESS KNOWS THAT THIS

9     IS WHAT IT WAS, THIS IS THE WAY IT WAS SENT, THIS IS EXACTLY

10    WHAT IT PURPORTS TO BE.  IT'S UP TO A JURY TO WEIGH THE

11    CREDIBILITY OF THE WITNESS.

12          AND I GUESS, YOU KNOW, CERTAINLY, YOU CROSS-EXAMINE

13    AS TO WHY ANYTHING ELSE IS THERE.  BUT MR. CARROLL'S TESTIMONY

14    IS THAT, NO, HE DOESN'T HAVE EVERY TEXT -- I'M SORRY, YEAH.

15    MR. CARROLL'S TESTIMONY IS THAT HE DOES NOT HAVE EVERY TEXT

16    MESSAGE OR E-MAIL MESSAGE THAT THEY EVER EXCHANGED, BUT HE

17    TESTIFIED, EVEN AT THE SPOLIATION HEARING, THAT HE DID NOT GO

18    IN AND MANIPULATE THESE TEXT MESSAGES.

19          AND SO THERE IS NO ARGUMENT THAT THEY ARE INCOMPLETE.

20    THE TESTIMONY IS THAT THESE ARE AUTHENTIC.  THESE ARE ACCURATE

21    COPIES OF WHAT -- THE MESSAGES THAT SHE SENT TO HIM.  AND THEY

22    ARE EXTREMELY RELEVANT TO THIS CASE.  SO --

23          THE COURT:  OKAY.  I WILL FIND -- YEAH, I WILL DENY

24    THAT ONE.  WE DEALT WITH A LOT OF THIS, AGAIN, AT THE

25    SPOLIATION HEARING.  AND SO I'M AWARE OF THE ISSUES.  AND,

59

1    AGAIN, I'M AWARE OF AND POINTED OUT TO BOTH SIDES, INCLUDING TO

2    MR. CARROLL HIMSELF, THE TYPE OF TOUGH QUESTIONS HE WILL BE

3    SUBJECTED TO BASED ON HOW SOME OF THESE MESSAGES APPEAR.

4            BUT, AT THIS POINT, I DON'T WANT TO RELITIGATE THE

5    ISSUES OF SPOLIATION.  SO IF THE ARGUMENT BEING MADE NOW IS AS

6    TO AUTHENTICITY, HE CAN TESTIFY HIMSELF AS TO WHAT THESE

7    E-MAILS SAY.  CERTAINLY IF MS. HART SHOWS UP, SHE CAN TESTIFY

8    TO SOME OTHER MEANING.

9            BUT I WILL, I WILL DENY IT BASED ON HIS TAKING THE

10   STAND AND TESTIFYING TO WHAT WE DO HAVE IN FRONT OF US,

11   REGARDLESS OF WHAT HAS BEEN SPOLIATED.  AND, AGAIN, THERE HAS

12   BEEN A FINDING OF SPOLIATION UP TO THIS POINT.  BUT THE REMEDY

13   HAS BEEN PROFESSED AS BEING A SIFTING CROSS-EXAMINATION THAT HE

14   WILL JUST HAVE TO ROLL WITH, HE'LL TAKE THE PUNCHES ON.

15           SO I WILL DENY THAT ONE.

16           ALL RIGHT.  I THINK THOSE ARE THE MOTIONS IN LIMINE.

17   THAT COMPLETES THAT.  BUT THE NEXT AREA I WANTED TO COVER ARE

18   ANY OBJECTIONS TO EXHIBITS THAT NEED TO BE HANDLED NOW.  BUT MY

19   GUESS IS THAT WE HAVE PRETTY MUCH COVERED THAT WITH RESPECT TO

20   OUR DISCUSSION ON THE E-MAILS AND TEXT MESSAGES AND ALL UNDER

21   OUR DISCUSSION ON THE MOTIONS IN LIMINE.

22           I SEE THAT A LOT OF THE OBJECTIONS TO THE EXHIBITS

23   ARE AS TO AUTHENTICITY, HEARSAY, INCOMPLETENESS.  SO THAT'S WHY

24   I'M THINKING THAT THEY GO AGAIN TO THOSE MESSAGES.  BUT TELL ME

25   IF THERE'S SOMETHING THERE THAT WE HAVE NOT DEALT WITH ALREADY.

60

1       DEFENSE HAS NO OBJECTIONS TO PLAINTIFF'S EXHIBITS, SO

2   WE ARE JUST TALKING ABOUT YOUR OBJECTIONS.  IS THAT RIGHT, MS.

3   MOLDEN, OR --

4       MS. MOLDEN:  REVERSE.

5       THE COURT:  I WAS GOING TO SAY, THAT DOESN'T MAKE

6   SENSE.  OKAY.

7       SO, MS. MYER, I THINK THAT YOU HAVE MADE YOUR

8   OBJECTIONS, THEN.  IS THAT RIGHT?

9       MS. MYER:  YES, YOUR HONOR, I HAVE.

10       THE COURT:  OKAY.

11       MS. MYER:  I WOULD BE HAPPY TO GO OVER EACH OF THESE

12   INDIVIDUALLY IF THE COURT IS INCLINED TO RECONSIDER ITS RULINGS

13   ON -- AS TO SPECIFIC EXHIBITS.  BUT I THINK I ALREADY HAVE MY

14   INSTRUCTIONS FROM THE COURT.

15       THE COURT:  OKAY.  THEN I WILL FIND THAT WE HAVE

16   ALREADY COVERED THE DISCUSSION OF EXHIBITS WITHIN OUR

17   DISCUSSION FOR MOTIONS IN LIMINE, AND I WILL DENY THOSE

18   OBJECTIONS AT THIS TIME.

19       ALL RIGHT.  AS FAR AS THE EQUIPMENT ORDER, WE'VE GOT

20   ONE IN PLACE.  WE'VE GOT MS. MYER LISTED, MS. MOLDEN, MR.

21   SHAPIRO, AND MS. -- TELL ME THE PRONUNCIATION OF HER LAST NAME

22   ONE MORE TIME.

23       MS. MOLDEN:  TIAN.

24       THE COURT:  OKAY.  SO THAT'S ALL THAT WE NEED COVERED

25   THERE IN TERMS OF CELL PHONES, LAP TOPS, AND ALL?

                                                      61

1              MS. MOLDEN:  YES, MA'AM.

2              THE COURT:  DOES ANYONE NEED TO GO INTO THE COURTROOM

3    WITH MS. BECK AT THIS TIME TO GO OVER OUR ELMO SYSTEM OR ANY

4    EQUIPMENT OUT THERE?  MS. MOLDEN?

5              MS. MOLDEN:  I THINK, I THINK I'M OKAY.

6              THE COURT:  MS. MYER, I'M NOT SURE IF --

7              MS. MYER:  NO.

8              THE COURT:  -- YOU'RE PLANNING TO USE ANY EQUIPMENT

9    OR ANYTHING?

10             MS. MYER:  NO.

11             THE COURT:  OKAY.  WELL, IS THERE ANYTHING ELSE?  IF

12   NOT, THEN, FOLLOWING THIS HEARING, I AM GOING TO ISSUE AN ORDER

13   THAT JUST MEMORIALIZES THE RULINGS THAT HAVE BEEN MADE TODAY.

14   AND I WILL SIGN THE CONSOLIDATED PRETRIAL ORDER TODAY AS WELL.

15             IS THERE ANYTHING ELSE, MS. MOLDEN?

16             MS. MOLDEN:  AND I WILL JUST POINT OUT THAT, YOU

17   KNOW, I THINK THAT -- AND I APPRECIATE MS. MYER'S WILLINGNESS

18   TO STIPULATE TO SEVERAL FACTS OF THIS CASE, BECAUSE I DIDN'T

19   WANT TO GO THROUGH HAVING TO CALL YOUR WITNESS TO ESTABLISH

20   THAT.  YOU KNOW, YOU'RE EVEN SUBJECT TO WAGE AND HOUR CLAIMS

21   AND TITLE VII, ET CETERA.  SO THAT'S EXTREMELY IMPORTANT IN

22   THIS CASE, BECAUSE WE ARE ONLY HAVING TWO WITNESSES.  SO I JUST

23   WANT TO GET ON THE RECORD AGAIN THAT THERE ARE NO QUESTIONS AS

24   TO JURISDICTION AND THOSE THINGS THAT I WOULD NORMALLY HAVE TO

25   ESTABLISH IN A CASE BECAUSE WE HAVE STIPULATED TO THOSE FACTS,

62

1    I THINK, AT ATTACHMENT E.

2              THE COURT:  THE COURT DOES HAVE YOU ALL'S

3    STIPULATIONS.  AND I ALSO NOTICE THAT YOU ARE NOT REQUIRED TO

4    -- AND WE DID NOT PROVIDE ON THE VERDICT FORM A FINDING OF

5    WHETHER ATA IS A BUSINESS INVOLVED IN THE COMMERCE THAT IS

6    SUBJECTED TO THE FLSA.

7              MS. MOLDEN:  RIGHT.

8              THE COURT:  BECAUSE THAT WAS INCLUDED IN, I THINK,

9    POINT FIVE OF YOUR STIPULATION.  SO THE COURT APPRECIATES THOSE

10   STIPULATIONS AS WELL.

11             ANYTHING ELSE FROM YOU, MS. MYER?

12             MS. MYER:  IF I COULD JUST CONFIRM THAT, THAT I'LL

13   SUBMIT A PROPOSAL ON THE VERDICT FORM REGARDING SETOFF, AND

14   THAT I'LL GET WITH MS. MOLDEN TO COME UP WITH A PROPOSED VOIR

15   DIRE QUESTION OR TWO REGARDING --

16             THE COURT:  THE TRUMP FACTOR?

17             MS. MYER:  -- THE TRUMP FACTOR.

18             THE COURT:  ALL RIGHT.  THAT'S FINE.

19             MS. MYER:  WHO WOULD HAVE THOUGHT THAT WE'D HAVE TO

20   DEAL WITH A TRUMP FACTOR AT A TRIAL.

21             THE COURT:  BUT I THINK IT'S VERY SMART THAT YOU ALL

22   -- I HADN'T EVEN THOUGHT ABOUT THAT.  BUT I THINK IT'S SMART

23   THAT YOU ALL WILL DEAL WITH THAT.  SO I LOOK FORWARD TO

24   RECEIVING THAT.

25             ALL RIGHT.  JUST TO LET YOU KNOW, WE START WITH THE

63

1    JURY 9:30 EVERY DAY.  I ASK THE ATTORNEYS TO BE HERE 9:00, 9:10

2    IN CASE THERE IS ANYTHING THAT WE NEED TO TAKE UP AMONGST

3    OURSELVES OUTSIDE OF THE PRESENCE OF THE JURY.  WE GENERALLY

4    WORK UNTIL 5:00, BUT A LOT OF TIMES, WE FIND OURSELVES STOPPING

5    A LITTLE BEFORE THAT, 4:00, 4:30.  THE JURORS CERTAINLY

6    APPRECIATE IT, GIVEN THE TRAFFIC SITUATION AROUND THE

7    COURTHOUSE AND THE FACT THAT, BECAUSE THEY ARE FEDERAL JURORS

8    INSTEAD OF STATE ONES, THEY ARE COMING FROM ALL OVER THE PLACE.

9    SO IF WE CAN, WE TRY TO STOP A LITTLE EARLY.  AND THAT

10   SHOULDN'T BE A PROBLEM, GIVEN WHAT YOU ALL HAVE TOLD ME YOU

11   INTEND TO PRESENT IN THIS CASE.

12           BUT OTHER THAN THAT, FEEL FREE TO CALL US IF YOU HAVE

13   ANY QUESTIONS THAT COME UP ABOUT THE WAY WE DO THINGS DURING

14   TRIAL, AND WE WILL TRY TO ANSWER THEM AS QUICKLY AND AS BEST AS

15   WE CAN.

16           ALL RIGHT.  IF THERE'S NOTHING ELSE, WE ARE

17   ADJOURNED.  THANK YOU.

18           MS. MYER:  THANK YOU.

19           MS. MOLDEN:  THANK YOU.

20               (PROCEEDINGS CONCLUDED AT 11:41 A.M.)

21                    -   -   -

22

23

24

25

64

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF GEORGIA

3    CERTIFICATE OF REPORTER

4

5

6          I DO HEREBY CERTIFY THAT THE FOREGOING PAGES ARE A

7    TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN DOWN BY

8    ME IN THE CASE AFORESAID.

9          THIS, THE 8TH DAY OF DECEMBER, 2016.

10

11

12

13                              /S/ ELIZABETH G. COHN

                                _____
14                              ELIZABETH G. COHN, RMR, CRR
                                OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25