## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| REGINALD CARROLL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:14-CV-00747-ELR |
| | * | |
| ATA RETAIL SERVICES, INC., and, | * | |
| DONNA HART, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## O R D E R

Presently before the Court are Defendant's Motion for Judgment as a Matter of Law and Motion for New Trial and Plaintiff's Motion for Attorney Fees and Expenses. For the reasons set forth below, the Court denies Defendant's Motions and grants in part and denies in part Plaintiff's Motion.

## I. Background

Plaintiff Reginald Carroll brought claims against Defendants ATA Retail Services, Inc. ("Defendant" or "ATA") and Donna Hart alleging that Hart sexually harassed him. Plaintiff, an African-American male, worked for ATA as a part-time merchandiser from approximately January 11, 2013, until April 24, 2013. Hart, a

Caucasian female, worked for ATA as a route supervisor and supervised Plaintiff. Plaintiff brought a total of six claims against Defendants.  Plaintiff brought three claims against ATA pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"): Count I was a claim for sexual harassment based on a hostile work environment theory; Count II was a claim for sexual harassment based on a tangible employment action; and Count III was a claim for retaliation for engaging in protected activity.  Plaintiff also brought claims against ATA and Hart pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA") for failure to pay wages owed (Count IV) and for punitive damages (Count VI).  Finally, Plaintiff brought a claim for battery against Hart (Count V).

On November 19, 2014, the Court adopted Magistrate Judge Gerrilyn G. Brill's Non-Final Report and Recommendation ("R&R") and dismissed Plaintiff's Title VII retaliation claim (Count III) and battery claim (Count V).  [Doc. 14]. Regarding the remaining claims, on March 30, 2016, the Court adopted Magistrate Judge Brill's R&R and overruled Defendant's objections thereto.  [Doc. 52]. Specifically, the Court granted Defendant's Motion for Summary Judgment as to Plaintiff's claim against Defendant ATA for sexual harassment under Title VII through a hostile work environment theory (Count I) and denied Defendant's Motion as to Plaintiff's claims against Defendant ATA for sexual harassment under

Title VII through a tangible employment action theory (Count II), under the FLSA (Count IV), and for punitive damages (Count VI).  The Court dismissed Defendant Hart from this action for lack of service.

On November 1, 2016, this case proceeded to a jury trial on Plaintiff's remaining claims against Defendant ATA for Title VII sexual harassment, FLSA, and punitive damages.  The trial lasted two and half days, with the jury rendering a verdict on the afternoon of the third day.  The jury found in favor of Plaintiff on all claims.  [Doc. 82].  The jury found that Defendant had violated the FLSA and awarded Plaintiff $20.00 as monetary damages.  The jury found in favor of Plaintiff on his claim for Title VII sexual harassment and awarded Plaintiff $27,000.00 as monetary damages for this claim.  Additionally, the jury awarded Plaintiff punitive damages in the amount of $162,500.00 on his claim for sexual harassment.  Thus, judgment was entered in favor of Plaintiff and against Defendant on his claims for Title VII sexual harassment based on a tangible employment action theory, pursuant to the FLSA, and punitive damages, and in favor of Defendant and against Plaintiff on his claim of Title VII sexual harassment based on a hostile work environment theory.

Thereafter, Plaintiff filed a Motion for Attorney Fees and Expenses.  [Doc. 85].  Defendant filed a Motion for Judgment as a Matter of Law [Doc. 87] and a

Motion for New Trial [Doc. 88].   These motions are now ripe for the Court's consideration.

## II. Defendant's Motions for Judgment as a Matter of Law and New Trial

During the trial, at the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).   Defendant now renews its motion pursuant to Fed. R. Civ. P. 50(b) and asks that the Court enter judgment as a matter of law in favor of Defendant on both Plaintiff's FLSA claim and Title VII claim.   In short, Defendant argues that the evidence admitted at trial does not allow Plaintiff to meet his burden of proof as to each element of his claims.

Defendant also moves in the alternative for a new trial or remittitur pursuant to Fed. R. Civ. P. 59.   In sum, Defendant argues that the verdict is against the weight of the evidence, the evidentiary rulings and improper closing argument prevented a fair trial, and a new trial is now warranted.   Defendant further requests that, should the Court decline to grant a new trial, the Court grant a remittitur, either reducing or vacating the punitive damages award because it was procured on the basis of improprieties.

Rule 50 governs motions for judgment as a matter of law and provides as follows:

**(a) Judgment as a Matter of Law.**

**(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue, the court may:

> **(A)** resolve the issue against the party; and

> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;

> **(2)** order a new trial; or

> **(3)** direct the entry of judgment as a matter of law.

FED. R. CIV. P. 50.

"In deciding a motion for judgment as a matter of law, we review all the evidence, drawing all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). We do not make credibility determinations or weigh the evidence. Id. We give credence to evidence supporting the nonmoving party's case, as

well as "uncontradicted and unimpeached" evidence supporting the moving party, "at least to the extent that that evidence comes from disinterested witnesses." Id. at 151, 120 S.Ct. at 2110.

Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 724 (11th Cir. 2012) (quotation omitted).  "Judgment as a matter of law for a defendant is appropriate, when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim." Cadle v. GEICO Gen. Ins. Co., 838 F.3d 1113, 1121 (11th Cir. 2016) (quotation omitted).   "The motion should be granted only when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action."  Howard v. Walgreen Co., 605 F.3d 1239, 1242 (11th Cir. 2010) (quotation omitted).  "But if there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." Swoope v. CSX Transportation, Inc., 666 F. App'x 820, 823 (11th Cir. 2016) (quotation omitted).

"In considering a Rule 50(b) motion after the jury verdict, only the sufficiency of the evidence matters. The jury's findings are irrelevant." Cadle, 838 F.3d at 1121 (quotation omitted). "The jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find

for the party who prevailed at trial." <u>Chaney v. City of Orlando, Fla.,</u> 483 F.3d 1221, 1228 (11th Cir. 2007).   Finally, the Eleventh Circuit "repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a)." <u>Howard,</u> 605 F.3d at 1243.

Rule 59 governs motions for new trial and provides in pertinent part that the Court "may, on motion, grant a new trial on all or some of the issues--and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).

> A losing party may . . . move for a new trial under Rule 59 on the grounds that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." <u>Montgomery Ward & Co. v. Duncan,</u> 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940).   Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if in [the court's] opinion, the verdict is against the clear weight of the evidence . . .  or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

<u>McGinnis v. Am. Home Mortg. Servicing, Inc.,</u> 817 F.3d 1241, 1254 (11th Cir. 2016).

"Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment] notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence." <u>Id.</u> at 1255 (quotation omitted).   "[W]hen

7

independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." Id. (quoting Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982)). Finally, "[b]ecause it is critical that a judge does not merely substitute [her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation omitted).

A motion for judgment as a matter of law and a motion for new trial may be considered together, even though the standards are not the same. Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1320 n.3 (11th Cir. 1999). "Because a less stringent standard applies to a motion for a new trial than to a motion for judgment as a matter of law, failure to meet former is fatal to the latter." Id. (quotation omitted); see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. All Am. Freight, Inc., 197 F. Supp. 3d 1376, 1381 (S.D. Fla. 2016) (addressing the motions for new trial and judgment as a matter of law jointly because the failure to meet the Rule 59 standard for a motion for new trial is fatal to the Rule 50(b) standard for a motion for judgment as a matter of law); Williams v. Consol. City of Jacksonville, No. 3:00-CV-469J32TEM, 2006 WL 4794172, at *1 (M.D. Fla. Sept. 11, 2006) (recognizing that the two motions may be considered together).

8

Accordingly, the Court will consider Defendant's Motion for Judgment as a Matter of Law together with Defendant's Motion for New Trial. The Court will assess whether Defendant can meet the standard for a motion for new trial, that is whether the verdict is against the clear weight of the evidence or will result in a miscarriage of justice. See McGinnis, 817 F.3d at 1254. Defendant makes several arguments, which the Court addresses in turn below.

## A. Whether the Jury's Verdict Is Against the Weight of the Evidence

### 1. FLSA

Defendant argues that Plaintiff was required to prove economic harm in the form of a loss of earned pay under the FLSA and that a finding of economic harm is against the weight of the evidence presented at trial. Defendant points to evidence that Plaintiff's time records and pay records match, which indicated that he was paid for all of his time. Transcript of Jury Trial Proceedings ("Tr.") at 219. Defendant also directs the Court to evidence at trial that Plaintiff was paid for sixteen (16) hours from April 23, 2013, through May 3, 2013, for which he did not work. See, e.g., id. at 57, 78, 162, 165. Defendant contends that the evidence shows that there are only 36 minutes for which he did not receive pay. Id. at 29-30. Defendant argues that the 36 minutes is not enough to offset the 16 hours he was overpaid.

Additionally, regarding Plaintiff's allegation that Hart had altered his time record, Defendant argues that there was no trial evidence that Plaintiff had given

Hart his personal logins, which were unique to him and necessary for entering his time. Id. at 143-144, 146, 249, 266, 281, 299. Instead, according to Defendant, Hart was assigned logins that allowed her to view time records for Plaintiff, not alter or delete these time records. Id. at 250, 266, 267. Defendant's witness, Stephanie Doty, who was Hart's supervisor, testified that Hart had neither the ability nor authority to use her company-assigned logins to alter Plaintiff's time entries. Id. at 250. Finally, Defendant contends that two jurors after the trial told defense counsel that Plaintiff did not suffer any economic harm. Thus, Defendant argues that it is impossible to determine how the jury reached its conclusion that Plaintiff was underpaid and deserving of $20.00 on his FLSA claim.

Plaintiff responds that he produced at trial several copies of time-keeping and payroll records, which according to Plaintiff, contained numerous errors. Pl.'s Ex. 13, 38-42. Plaintiff also points to his testimony wherein he specifically identified the 36 minutes missing from his time entry and that Hart entered his time incorrectly. Tr. at 29-30. Plaintiff also identified other time entries, where even though the time was entered, he did not enter it. These entries were accompanied by the initials, "DH." Id. at 52-55. Plaintiff testified that he did not know what "DH" meant on these time entries because he did not make the time entries. Id. However, he also confirmed that Hart's initials were "DH" and the notations next to his time entries "may be" referring to her. Id. at 52, 228. In addition, Plaintiff shows emails

10

admitted at trial supporting the conclusion that Hart altered his time records, including time when he was no longer working for Defendant. Pl's. Ex. 8, 10-11, 26.

Furthermore, upon the Court's review, the evidence at trial showed that Plaintiff testified that he complained to Hart that the hours he worked were not accurately reflected in his time entries. Tr. at 52, 162, 180-181. Plaintiff also testified that he estimated that he was not paid for 30 hours of work he had completed. Id. at 115, 166. In addition, Plaintiff testified that Plaintiff could not recall if he had ever given Hart his logins for entering his time. Id. at 144, 146. However, in addition to the emails cited by Plaintiff above, Plaintiff also introduced an email wherein Hart stated that she had entered his time while he was still working for Defendant. Pl.'s Ex. 5. When asked about this email, Plaintiff testified that "sometimes" it was common practice for Hart to enter his time for him. Tr. at 26. Finally, Plaintiff plainly testified that Hart entered his time and she also told him that she entered his time. Id. at 226-227.

After a review of the evidence, the Court finds that the jury's verdict on Plaintiff's FLSA claim and award of $20.00 as monetary damages is not contrary to the great weight of the evidence. Reasonable inferences in support of Plaintiff and Defendant could be drawn from the evidence. "It is the established approach in this Circuit that 'when the trial involves simple issues, highly disputed facts, and there is

an absence of 'pernicious occurrences,' trial courts should be considerably less inclined to disturb a jury verdict.'" Fanelli v. BMC Software, Inc., No. 1:11-CV-436-LMM, 2015 WL 13157318, at *5 (N.D. Ga. Aug. 31, 2015), aff'd, No. 15-14431, 2017 WL 1405029 (11th Cir. Apr. 20, 2017) (quoting Williams, 689 F.2d at 974). This is the case here.

Defendant argues that Plaintiff's testimony is contradictory, since he denies giving Hart his personal logins but also speculates that Hart altered and entered his time. However, the evidence shows that he did not deny giving Hart his logins, and instead, testified that he could not recall whether he did so. Id. at 144. In addition, Defendant argues that the Court need not consider or construe Plaintiff's self-contradictory testimony and that the jury disregarded Ms. Doty's uncontradicted testimony that Hart did not have the ability or authority to alter or enter his time. The jury was free to weigh the evidence and make credibility determinations regarding the witnesses and evidence presented. The Court should not substitute its "own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury" which would result in depriving litigants of their right to trial by jury. Rosenfield v. Wellington Leisure Prod., Inc., 827 F.2d 1493, 1498 (11th Cir. 1987). "Where conflicting testimony is presented and the jury is called upon to make credibility determinations and to weigh the evidence, we will uphold the verdict as long as there is some support for the jury's decision." Quick v. City

of Birmingham, 346 F. App'x 494, 495 (11th Cir. 2009). The record here provides some support for the jury's decision, and therefore, the Court cannot conclude that the verdict is against the great weight of the evidence. See id. (where the record provided some support for the jury's verdict, the district court did not abuse its discretion in denying the motion for new trial). The Court need not be able to duplicate the jury's damages calculations and arrive at $20.00. Instead, the amount of damages was left to the jury's discretion. Importantly, there was evidence in the trial from which a jury could have found that Defendant did not pay Plaintiff for all of the hours he worked and that he was due damages pursuant to the FLSA even after considering the amount he was overpaid.

Finally, the Court notes that it has not considered alleged post-trial comments by jurors. Defendant's counsel, Ms. Mari Myer, has submitted an affidavit in which she states that after the jury reached a verdict, two jurors returned to the courtroom and met with counsel. Myer Aff. at ¶ 2. [Doc. 88-2]. According to Ms. Myers, these "jurors stated that they did not believe that Plaintiff . . . suffered economic harm." Id. at ¶ 3. First, these statements are hearsay. See KAAP Indus. v. Burns & McDonnell Eng'g Co., No. CV F 06-0417 LJO GSA, 2008 WL 3834488, at *2, n.1 (E.D. Cal. Aug. 15, 2008) (statements made by jurors to defense counsel, in post-trial interviews, as to the evidence that the jury found determinative, was hearsay); Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. CV02-1087VAPCWX, 2008

WL 6873810, at \*3 (C.D. Cal. Feb. 25, 2008), aff'd, 563 F.3d 1358 (Fed. Cir. 2009) (counsel's declaration of the substance of discussions he had with the jury foreperson was "rank hearsay"); United States v. Jones, 520 F. Supp. 842, 846 (E.D. Pa. 1981) (where the defendant's counsel submitted an affidavit relaying a comment the juror had made to counsel after the trial, counsel's statement was hearsay).

Second, even if the Court had an affidavit from a juror, which it does not, the Court would be been precluded by Fed. R. Evid. 606(b) from considering the jurors' statements. Sims' Crane Serv., Inc. v. Ideal Steel Prod., Inc., 800 F.2d 1553, 1556 (11th Cir. 1986). Rule 606(b) provides as follows:

> **(b) During an Inquiry Into the Validity of a Verdict or Indictment.**
>
> **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> **(2) Exceptions.** A juror may testify about whether:
>
> **(A)** extraneous prejudicial information was improperly brought to the jury's attention;
>
> **(B)** an outside influence was improperly brought to bear on any juror; or
>
> **(C)** a mistake was made in entering the verdict on the verdict form.

FED. R. EVID. 606(b).

> In short, except for testimony concerning extraneous prejudicial information or improper outside influence, Rule 606(b)(1) prohibits a juror from providing testimony or other evidence about anything that happened or occurred during deliberations, including a juror's mental processes or the reasons the jury reached a particular verdict.

United States v. Cavallo, 790 F.3d 1202, 1226 (11th Cir. 2015)

> District courts are subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all. In fact, for nearly a century, the Supreme Court has recognized a near-universal and firmly established common-law rule flatly prohibiting the use of juror testimony to impeach a verdict.

United States v. Siegelman, 640 F.3d 1159, 1185 (11th Cir. 2011) (citing Tanner v. United States, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)). "Rule 606(b) codifies the long-standing common law rule against the admission of jury testimony to impeach a verdict." United States v. Snipes, 440 F. App'x 709, 711 (11th Cir. 2011). Accordingly, the Court will not consider defense counsel's affidavit with regard to post-trial juror comments. In sum, the Court does not find that upholding the jury's verdict on Plaintiff's FLSA claim will result in a miscarriage of justice.

### 2. Sexual Harassment

For Plaintiff's claim for sexual harassment based on a tangible employment action theory, Defendant argues that Plaintiff had to prove not only sexual harassment during his employment, but also (1) that he was denied pay or an

15

additional route and (2) causation. Defendant argues that because the jury's verdict was against the weight of the evidence regarding his FLSA claim, such that the evidence showed he did not lose pay, the jury's verdict premised on a loss of pay for his sexual harassment claim is also against the weight of the evidence. Having found that the jury's verdict on Plaintiff's FLSA claim was not against the great weight of the evidence, Defendant's contention – that Plaintiff's sexual harassment claim based on a loss of pay must also fail – is without merit.

As for a new route, Defendant argues that the jury's verdict on Plaintiff's Title VII claim is against the clear weight of the evidence. The evidence admitted at trial includes an email from Hart to Plaintiff dated March 13, 2013, wherein she says that she "will be getting a new supervisor route." Pl.'s Ex. 5. Plaintiff testified that Hart told him that other routes were available and that he could have any route he wanted, including even if it was out of his region, if they could "establish a relationship." Tr. at 41-42, 183. He also testified that Hart offered him "another route" in exchange for sex. Id. at 113. Plaintiff testified that he never received a new route and he never had sex with Hart, and that he believed he did not get the new route because he would not have sex with her. Id. at 42; 113, 114. Plaintiff also clarified that he did not have documents showing that Hart ever refused to assign him a route or any information about the new route. Id. at 135, 184. Ms. Doty testified that it would not be typical for a supervisor to authorize a

16

merchandiser, such as Plaintiff, an additional route.  Id. at 262.  Ms. Doty clarified

that it would not have been possible unless Hart talked to Ms. Doty first and

received Ms. Doty's permission.  Id. at 263.  Ms. Doty did not recall anything about

Hart contemplating a new route for Plaintiff.  Id. at 264.  Finally, Ms. Doty testified

that if Hart wanted to hire someone else to take on an additional route, she had the

authority to hire and train someone to do so.  Id. at 294.

After a review of the evidence, the Court cannot conclude that the jury's

verdict was against the clear weight of the evidence.  Once again, the jury was free

to make credibility determinations about Plaintiff and Ms. Doty and draw its own

conclusions.  There is support from the evidence presented at trial to find that

Plaintiff suffered an adverse employment action in the form of the denial of a route

based on (1) Plaintiff's testimony; (2) Ms. Doty's testimony that while assigning a

new route was unusual and required her permission, it was not impossible; and (3)

Ms. Doty's testimony that Hart had the authority to hire and train someone to take

on an additional route.

Turning then to causation, Defendant argues that the jury's verdict is against

the clear weight of the evidence because Hart lacked the power and ability to award

or deny Plaintiff either an additional route or pay.  The evidence presented above

shows that the jury's verdict was not against the clear weight of the evidence as it

related to causation.  The jury's verdict on Plaintiff's Title VII claim, which

presumed a finding that Hart punished Plaintiff for rejecting her sexual advances by either a loss of pay or denial of a route, was supported by evidence in the record. The Court does not find that upholding the jury's verdict on Plaintiff's claim for sexual harassment will result in a miscarriage of justice.

## B. Speculative Testimony

In support of a new trial, Defendant argues that Plaintiff gave speculative testimony about whether Hart entered or altered his time, in violation of Fed. R. Evid. 602 and the Court's pretrial instructions.   Defendant contends that this testimony misled the jury as to a material fact regarding his loss of pay, affecting both his FLSA and Title VII claims.

Prior to trial, Defendant presented a motion in limine regarding whether Plaintiff may, during his testimony, speculate about the knowledge, intent, opinions, or conduct of Hart.  The Court granted in part and denied in part Defendant's motion in limine.   [Doc. 72].   The Court clarified that the motion was granted as to Plaintiff's testimony about Hart's intentions and denied as to Plaintiff's testimony about Hart's conduct.  [Id.]

The direct testimony from Plaintiff, about which Defendant now complains, was that Hart had altered or entered Plaintiff's time.  Def.'s Mot. for New Trial at 19 (citing Tr. at 24, 27, 29, 30, 47, 57).  At no time during Plaintiff's testimony on these issues, did Defendant object, including an objection based on speculation.  As

18

a result, Defendant has waived any objection to this testimony and cannot rely on it to form the basis of a motion for a new trial. See Barragan v. LCT Transp. Servs., Inc., No. 00-2040-CIV, 2002 WL 32248046, at *2 (S.D. Fla. Mar. 15, 2002), aff'd sub nom. Barragan v. LCT Transp., 65 F. App'x 713 (11th Cir. 2003) (finding that the plaintiff had waived his right to object to testimony where he failed to object to the testimony at trial, failed to move to strike the testimony, and failed to request a curative instruction to be given to the jury); see also Nettles v. Daphne Utilities, No. 15-13822, 2017 WL 1960395, at *2 (11th Cir. May 11, 2017) (failure to object to evidentiary error "fatal" to the claim); United States v. Green, No. CR415-204, 2016 WL 3866567, at *3 (S.D. Ga. July 13, 2016) (evidentiary error was not properly preserved when there was no objection at trial regarding the evidence); Jordan v. City of Birmingham, No. 2:13-CV-01633-AKK, 2015 WL 12806596, at *1 (N.D. Ala. May 5, 2015) (where the defendant had failed to object at trial, the defendants could not advance any arguments in a motion for new trial that they failed to raise at trial).

> "[O]ne of the fundamental purposes of the contemporaneous objection rule is to protect judicial resources, in particular by ensuring that the trial courts will have an opportunity to avoid errors that might otherwise necessitate time-consuming retrial." United States v. David, 83 F.3d 638, 644-45 (4th Cir. 1996). Another purpose of the contemporaneous objection rule is to prevent counsel from "'sandbagging' the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal." Id. at 645.

United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). "By failing to interpose a timely objection during the direct examination of either witness, the defense provided the district judge with no timely opportunity to avoid serious error that might otherwise have necessitated a time-consuming retrial." Id.

"A party generally must object to preserve error in the admission of evidence regardless of whether a party or a court violates an in limine ruling." Boyd v. Alabama Dep't Of Corr., 296 F. App'x 907, 909 (11th Cir. 2008). "Under certain circumstances, however, a motion in limine may be adequate to preserve an error for appeal if a good reason exists not to object at trial." Judd v. Rodman, 105 F.3d 1339, 1342 (11th Cir. 1997). Nevertheless, "[e]ven if the district court committed error in admitting or excluding evidence, such error is harmless and not grounds for granting a new trial unless it affected a party's substantial rights." Boyd, 296 F. App'x at 908; Judd, 105 F.3d at 1342 (after finding that the movant had preserved an error via a motion in limine even though counsel had not objected, still requiring that the movant establish that a substantial right was affected by the admission of the evidence).

Here, even if Defendant's motion in limine was adequate to preserve any error, the Court would find any error harmless and not affecting Defendant's substantial rights. Defendant has not argued that such an error affected its substantial rights. Moreover, as Defendant acknowledges, on cross-examination in

response to defense counsel's question about whether Plaintiff was assuming that Hart entered his time, Plaintiff conceded that he did not see Hart enter the time. Tr. at 162. Defendant argues that this cross-examination testimony came a day too late, after Plaintiff's direct testimony and the damage was already done. However, Plaintiff specifically testified on direct examination that he "assume[d] Hart" entered his time. Id. at 27, 57. Defendant argues that Plaintiff was testifying to matters outside of his personal knowledge and this testimony misled the jury. Yet, there could be no misleading of the jury when Plaintiff plainly admitted that he was assuming Hart entered his time. Once again, the jury was free to weigh the evidence and assess the credibility of Plaintiff in reaching its verdict, including an assessment about his assumptions. Thus, the Court finds that any alleged error would be harmless because Defendant has failed to show that it affected its substantial rights to warrant a new trial.

## C. Evidentiary Errors

Defendant argues that a new trial is warranted because the Court erred by admitting into evidence sixteen pages of emails, which contained approximately fifty individual emails, from Hart to Plaintiff after Plaintiff had resigned from Defendant. Pl.'s Exs. 9, 14, 15, 22, 23, 25, 26, 27, 28, 29, 31, 32, 33, 35, 36, 37; Tr. at 61-93. Defendant asserts that the emails were highly prejudicial, confusing, and misled the jury; Plaintiff used the emails to indirectly prove Hart's bad character;

the emails from Hart's personal email address had no apparent connection to Defendant; and Hart's threatening emails were legally irrelevant and carried a heightened risk of inflaming the jury.

Plaintiff responds that the emails were correctly admitted at trial as legally relevant and not unfairly prejudicial. Even assuming the Court made any errors in admitting this evidence, Plaintiff argues that the errors did not rise to the level of interfering with Defendant's substantial rights and the jury was carefully instructed on whether to, and to what extent, Defendant could be liable.

The Eleventh Circuit has instructed that "a new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')." Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004). "To determine if a party's substantial rights were affected, we analyze factors including the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during trial." SEB S.A. v. Sunbeam Corp., 148 F. App'x 774, 790 (11th Cir. 2005) (quotation omitted); see also Peat, Inc., 378 F.3d at 1162. Additionally, as noted above, "[b]ecause it is critical that a judge does not merely substitute [her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the

verdict is against the great—not merely the greater—weight of the evidence." Lipphardt, 267 F.3d at 1186 (quotation omitted).

The Court has reviewed its rulings on Defendant's motion in limine[1] and the rulings on each email during the trial.  The Court has also reviewed the necessary factors to determine if Defendant's substantial rights were affected and concludes that they were not.  Importantly, Defendant relies on its counsel's affidavit about post-trial juror comments for support that the jury punished Defendant for the emails from Hart and that the jury was misled.  However, the Court will not consider this hearsay evidence. See *supra*. The Court has not found that the verdict is against the great weight of the evidence, and therefore, the Court will not substitute its own judgment for that of the jury.

### D.  Closing Argument

Defendant argues that a new trial is warranted because of inflammatory statements made by Plaintiff's counsel during her closing argument, which allowed the jury to enter a verdict based on inadmissible and false information.  "District courts have considerable discretion to control the scope and tone of counsels' closing arguments." Hilger v. Velazquez, 613 F. App'x 775, 776 (11th Cir. 2015).

---

[1] Defendant objected generally to the testimony found in the emails in its Motion in Limine. However, Defendant did not present the specific emails at issue until the pre-trial conference, making it difficult for the Court and Plaintiff to properly review them.  Instead, the Court gave a general instruction and ruling on Defendant's Motion in Limine and allowed the emails generally but recognized that each email may need to be addressed individually at trial. See Order on Trial Matters [Doc. 72]; Transcript of Pretrial Conference [Doc. 97 at 34].

The "general rule [in this Circuit] is that a timely objection is necessary to bring to the district court's attention errors in counsel's arguments." Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir. 1993); see McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990) ("A contemporaneous objection to improper argument is certainly the preferable method of alerting the trial court to the error and preserving such errors for review.").

Defendant's counsel did not object to any part of Plaintiff's counsel's closing argument. "Defendants cannot now turn back the clock to object to these comments after the fact merely because of the unsatisfactory jury verdict." Ruizdelatorre v. City of Miami Beach, No. 06-21183-CIV, 2008 WL 5381431, at *19 (S.D. Fla. Dec. 22, 2008). Defendant could have brought the complained-about statements to the Court's attention immediately by objecting at the time they were made or after closing arguments outside the presence of the jury. See Wallace v. Mangiaracina, No. 8:14-CV-3022-T-24AEP, 2017 WL 2634891, at *3 (M.D. Fla. June 19, 2017). This would have allowed the Court an opportunity to rule on the objections and give a curative instruction if necessary. Id.; Ruizdelatorre, 2008 WL 5381431, at *18 ("Defendants could have raised objections . . . . But Defendants made the strategic decision to stay silent in the face of objectionable statements made by opposing counsel. This amounts to a waiver . . . because, without an objection, the Court had

no opportunity to remedy the situation."). Instead, Defendant waited to raise these issues for the first time in a motion for a new trial. See Wallace, 2017 WL 2634891, at *3.

Nevertheless, "where the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised." McWhorter, 906 F.2d at 677 (quotation omitted); see also Christopher v. Florida, 449 F.3d 1360, 1366 (11th Cir. 2006); Oxford Furniture Companies, Inc., 984 F.2d at 1128. The Eleventh Circuit has also explained that it "will not reverse a judgment unless the challenged closing argument was plainly unwarranted and clearly injurious." Hilger, 613 F. App'x at 776 (quotation omitted).

As a result, the Court has reviewed the specific comments by Plaintiff's counsel at issue. Defendant asserts that Plaintiff's counsel's closing argument was improper in four respects: (1) comments on Defendant's failure to investigate Plaintiff's claims; (2) comments on Defendant's failure to introduce evidence of its corporate culture; (3) comments on Defendant's size; and (4) false statements about Plaintiff's safety.

### 1. Defendant's Failure to Investigate

Regarding Defendant's failure to investigate, Defendant argues that an investigation was not relevant at trial because the Court had already granted summary judgment in its favor on Plaintiff's claim for sexual harassment based on

Defendant's <u>Faragher/Ellerth</u> Defense,[2] that Plaintiff failed to avail himself of Defendant's sexual harassment policy and reporting procedure. Therefore, based on this ruling, Defendant contends it was relieved of any obligation to investigate Plaintiff's allegations of sexual harassment. Defendant asserts that, despite this, Plaintiff's counsel commented on the absence of such an investigation during her closing statement. Tr. 342-347.

First, Plaintiff's counsel's closing statement regarding a failure to investigate was based on how Defendant should, and could, have investigated the case for trial, regardless of whether Plaintiff was still employed. <u>Id.</u> This involved investigating Plaintiff's claims of harassment and Hart's side of the story and corroborating or dispelling those claims, along with searching and subpoenaing emails. <u>Id.</u> Plaintiff's counsel opined that an investigation would give Defendant some basis for their position at trial rather than merely a theory that Defendant did not believe Plaintiff's version of events. <u>Id.</u> On the other hand, the <u>Faragher/Ellerth</u> Defense, on which Defendant prevailed at summary judgment regarding Plaintiff's Title VII sexual harassment claim based on a hostile work environment, required Defendant to prove that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. R&R at 25-

---

[2] <u>Burlington Inds., Inc. v. Ellerth</u>, 524 U.S. 742, 753-54 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998).

26 [Doc. 46].   Plaintiff's counsel's closing arguments did not touch on the Faragher/Ellerth Defense because she did not comment on Defendant's failure to prevent and promptly correct sexual harassing behavior or whether Plaintiff failed to take advantage of preventive or corrective opportunities.

Second, the Court charged the jury on Plaintiff's claim for punitive damages as follows:

> There is no single factor that determines whether the Defendant acted with malice or with reckless indifference to the plaintiff's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: one, whether the defendant engaged in a pattern of discrimination toward its employees; whether the defendant acted spitefully or . . . malevolently . . .; whether the Defendant showed a blatant disregard for civil legal obligations; whether the Defendant failed to investigate reports of discrimination; whether the Defendant failed to take corrective action concerning discriminatory acts or comments by its employees; and whether the person accused of discrimination was included in the employee's decision-making process concerning the tangible employment action.

Tr. at 331-332.   There were no objections to this charge.   Thus, contrary to Defendant's argument, whether Defendant investigated Plaintiff's claims of sexual harassment was relevant at trial to the issue of punitive damages.

Third, Defendant argues that Plaintiff's counsel's closing statement included false statements that Defendant knew about Plaintiff's claims while he was still employed but Defendant failed to act on them.   The specific statements about which Defendant complains, id. at 342:23-24, however, are in the context of actions taken

by Defendant's managers after Plaintiff quit his employment. Id. at 342:21-22. And a mere few sentences later, counsel made clear that her discussion about Defendant's failure to investigate involved a failure to investigate this case for trial, as noted above. Id. at 343-347. Finally, Plaintiff's testimony and Ms. Doty's testimony were clear that Plaintiff had never reported his claim of sexual harassment to Defendant while he was employed by Defendant. Id. at 187; 279. Thus, the jury had this testimony as context for counsel's closing statement as well. Based on the above, the Court does not find that counsel's closing arguments resulted in substantial injustice or that the comments were plainly unwarranted and clearly injurious.

### 2. Defendant's Failure to Introduce Evidence of Its Corporate Culture

Regarding corporate culture, Defendant argues that Plaintiff's counsel improperly commented on Defendant's failure to introduce evidence of its corporate culture or how it handled other harassment claims. Id. at 381. After a review of these comments, the Court finds that they do not rise to the level of substantial injustice or that the comments were plainly unwarranted and clearly injurious. Moreover, these comments were relevant to Plaintiff's claim for punitive damages. Defendant argues that any finding that the comments were relevant to punitive damages ignores the Court's exclusion of evidence of other harassment claims earlier in the trial, id. at 280, and that Plaintiff's counsel "was permitted to comment

28

on the absence of such evidence during closing argument." Def.'s Mot. for New Trial at 22 (emphasis removed). Yet, counsel was "permitted" to do so because Defendant never objected. Furthermore, Defendant argues that the reason these comments warrant a new trial is because the jury relied on inadmissible evidence, which was "almost certainly the basis for the punitive damages award." Id. Defendant's support for this is post-trial jurors' comments as contained in defense counsel's affidavit. Myer Aff. at ¶ 5. [Doc. 88-2]. As made clear above, the Court will not consider these hearsay statements.

### 3. Defendant's Size

Regarding Defendant's size, Defendant argues that Plaintiff's counsel's closing statement that Defendant "operates in 48 states and in Canada" was not based on any evidence in the record. Def.'s Mot. for New Trial at 22; Tr. at 381. Defendant argues that Plaintiff could have introduced evidence of Defendant's "size and net worth" during the trial, which would have given Defendant an opportunity to respond. Def.'s Mot. for New Trial at 22. According to Defendant, as a result of Plaintiff's counsel's closing arguments, Plaintiff attempted to procure a verdict on information that was not before the jury. First, contrary to Defendant's argument, Plaintiff's counsel did not comment on Defendant's net worth. Second, the Court does not find that counsel's benign statements implicate substantial justice or were plainly unwarranted or clearly injurious.

### 4. False Statements about Plaintiff's Safety

Defendant argues that Plaintiff's counsel falsely commented during closing argument that Hart threatened Plaintiff's "safety while he worked for" Defendant. Id. However, upon review of counsel's statement, while counsel did say that Hart threatened Plaintiff's safety, counsel did not say that Hart did this during Plaintiff's employment with Defendant.   Tr. 380:25-381:1.   Furthermore, the jury had the context of Plaintiff's own testimony that these threats occurred after he quit.  Id. at 200-201; 279.

Finally, the Court notes that it instructed the jury to consider only the evidence admitted by the Court in the case, that "statements, objections, or arguments made by the lawyers [were] not evidence in the case, and "what the lawyers say [was] not binding" on the jury.  Tr. at 319.  The Court "presume[s] that jurors follow the court's instructions."  Hilger, 613 F. App'x at 777 (in finding that the district court did not abuse its discretion in denying a motion for a mistrial, with regard to counsel's comments during closing, noting that the court instructed the jury that statements by lawyers were not evidence and that the jury was to base its decision only on the evidence presented).

In sum, Defendant raised no objections to Plaintiff's counsel's closing statement and instead challenges portions of the statement for the first time now. See Oxford Furniture Companies, Inc., 984 F.2d at 1128 (timely objection is

necessary).   Despite the fact that Defendant raised no objection to Plaintiff's counsel's closing argument, the Court finds that comments by counsel in her closing argument are not the basis for a new trial because the interest of substantial justice is not at stake.   Any alleged error by Plaintiff's counsel does not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings" here.   Davis v. Florida Agency for Health Care Admin., 612 F. App'x 983, 985 (11th Cir. 2015).

### E.  Cumulative Effect of Errors

Defendant argues that the cumulative effect of the erroneously admitted emails, the speculative testimony by Plaintiff, and the inflammatory closing argument by Plaintiff's counsel utterly tainted the trial and resulted in a jury verdict that was based on factors other than whether the admissible evidence proved each element of Plaintiff's claims.   Having found no error in the evidentiary admissions, Plaintiff's testimony, and Plaintiff's counsel's closing argument, the Court does not conclude that the cumulative effect of any rulings regarding these issues amounts to error warranting a new trial.

### F.  Remittitur

If the Court declines to grant a new trial, Defendant requests that the Court grant a remittitur pursuant to Fed. R. Civ. P. 59(e), either reducing or vacating the punitive damages award because it was procured on the basis of improprieties.

> "As a general rule, 'a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's

damage award exceeds the amount established by the evidence.'"
Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1266 (11th
Cir. 2008) (citing Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435,
1448 (11th Cir. 1985)); see also Frederick v. Kirby Tankships, Inc.,
205 F.3d 1277, 1284 (11th Cir. 2000) ("The rule in this circuit states
that where a jury's determination of liability was not the product of
undue passion or prejudice, we can order a remittitur to the maximum
award the evidence can support."). In reaching its determination, a
court "is not to substitute its judgment for the jury's, and where there
is sufficient evidence in the record to support the award, the [c]ourt
should not reduce merely because it would have found differently."
Moses v. K-Mart Corp., 905 F. Supp. 1054, 1057 (S.D. Fla. 1995).
Ultimately, the decision whether to grant a new trial or remittitur on
the grounds of excessive damages is a matter within the sound
discretion of the district court. E.g., Middlebrooks v. Hillcrest Foods,
Inc., 256 F.3d 1241, 1249 (11th Cir. 2001); Simon v. Shearson
Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir. 1990).

Lore v. Chase Manhattan Mortg. Corp., No. 1:04-CV-00204-LTW, 2008 WL
11320016, at *7 (N.D. Ga. Nov. 14, 2008).

Defendant argues that juror comments post-trial suggest that the improperly
admitted emails were part of the reason for assessing the punitive damages.
Defendant once again relies on counsel's affidavit, which the Court will not
consider. See *supra*. Defendant also argues, without support, that the improprieties
during Plaintiff's counsel's closing argument were "almost certainly the reason for
the jury's assessment of punitive damages." Def.'s Mot. for New Trial at 22.
However, the Court cautioned the jury that counsel's statements were not evidence.
See Lore, 2008 WL 11320016, at *7 (refusing to reduce damages based on
counsel's closing argument because counsel's arguments were not evidence). The

Court finds that Defendant has not made meritorious arguments or offered sufficient support for ordering a remittutur.  See id. (party offered vague and meager support for a reduced award).  Instead, upon the Court's own review of the record, the Court does not conclude that the jury's punitive damages award for $162,500.00 (or 6 times the Title VII monetary damages of $27,000) exceeds the amount established by the evidence.  See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1283 (11th Cir. 2008) (approving of punitive damages awards that are single-digit multipliers of the corresponding compensatory damages awards).

In sum, the Court finds that the jury's verdict is not against the clear weight of the evidence or will result in a miscarriage of justice; any alleged speculative testimony by Plaintiff was shown to be speculative by Plaintiff himself during his testimony and amounted to a harmless error; any errors in evidentiary admissions of emails did not cause substantial prejudice to Defendant; comments by Plaintiff's counsel during her closing argument did not amount to substantial injustice; the cumulative effect of any rulings during trial did not amount to error; and remittitur of the punitive damages award is not warranted.[3]   Thus, the Court denies Defendant's Motion for a New Trial.

---

[3] Having reached these findings, Defendant's Motion for Judgment as a Matter of Law must also fail because there was sufficient evidence from which a reasonable jury could find for Plaintiff. See Dudley, 166 F.3d at 1320 n.3 (failure to meet the standard for a motion for new trial is "fatal" to a motion for judgment as a matter of law).

## III. Plaintiff's Motion for Attorney Fees and Expenses

Plaintiff now moves for attorneys' fees and expenses in the total amount of $156,845.08. More specifically, Plaintiff seeks $153,783.90 in attorneys' fees for a total of 526.36 hours billed by seven attorneys and a paralegal. The seven attorneys are Regina Molden, Tremain Mattress, Elizabeth Brown, Alexander MacInnes, Tyler Evans, Robert Shapiro, and Jessica Tian. Plaintiff also seeks expenses in the amount of $3,061.18. In addition to a Declaration from attorney Molden, Plaintiff submits the Declarations of Curtis Mack and Peter Spanos in support of his fees request.

Defendant opposes Plaintiff's fees request, contending that the fees are unreasonable and should be reduced. Defendant submits the Declaration of its counsel, Mari L. Myer, in support of its opposition to Plaintiff's fees.

The Court has discretion in awarding reasonable attorneys' fees to the prevailing party under Title VII. 42 U.S.C. § 2000e-5(k). Similarly, the FLSA mandates that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b); see Dale v. Comcast Corp., 498 F.3d 1216, 1223 n.12 (11th Cir. 2007).

## A. Prevailing Party

To be awarded fees, Plaintiff must establish that he is a prevailing party. See CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) (pursuant to Title VII, a district court may award attorneys' fees to the prevailing party). First, Defendant argues that Plaintiff should not be awarded fees for dismissed claims against Hart. As noted above, the Court dismissed Hart from this action for lack of service, and therefore, Plaintiff clearly did not prevail against her on his claims. The Court agrees with Defendant that requiring Defendant to pay fees for the 2.58 hours devoted to the discussion of claims against Hart and preparation of a summons directed to her is unreasonable. Accordingly, the Court will subtract from the total allowed hours the .5 hours billed by Alexander MacInnes on March 14, 2014, and the 2.08 hours billed by MacInnes on June 3, 2014.

With respect to Hart, Defendant also argues that the Court should subtract 12 hours from Plaintiff's fee request for Regina Molden's preparation of a cross examination of Hart. Defendant argues that a more reasonable time for cross examination for a witness who had never been deposed would have been one or two hours. Defendant listed Hart as a possible witness at trial, and according to Ms. Molden's supporting affidavit, Defendant did not reveal that Hart would not be present at trial until opening statements. Thus, the Court agrees with Ms. Molden that she needed to prepare to cross examine Hart. The Court finds that 12 hours for

35

preparation to cross examine Hart is reasonable, given the central role she played in this case. Accordingly, the Court will allow fee recovery for all 12 hours.

Second, Defendant asserts that it should not be required to pay for Plaintiff's time devoted to unsuccessful claims.

> Where a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories[,] . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved . . . , and therefore no fee may be awarded for services on the unsuccessful claim." Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quotation omitted). However, when a plaintiff's claims for relief "involve a common core of facts or [are] based on related legal theories[, m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." Id.

Strickland v. Alexander, No. 1:12-CV-02735-MHS, 2016 WL 690894, at *5 (N.D. Ga. Jan. 12, 2016); see also Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987).

As noted above, the Court dismissed Plaintiff's claims for retaliation (Count III) and battery (Count V) early in the case by granting Defendant's Motion to Dismiss. The Court then granted summary judgment to Defendant on Plaintiff's Title VII sexual harassment claim through a hostile work environment theory (Count I). Defendant asks that the Court not award any fees for work on these claims. Additionally, Defendant requests that the Court not award fees for any time

36

spent on the issue of spoliation that was briefed heavily in Defendant's Motion for Summary Judgment.

After a review of the record, the Court finds that the three claims (retaliation, battery, and sexual harassment based on a hostile work environment theory) were based on a common core of facts and related legal theories. While, in theory, battery appears to stand as a distinct claim, it was based on actions Hart allegedly took against Hart, which also formed the basis for Plaintiff's harassment claims. Additionally, the issue of spoliation was based on the same facts and was intertwined with Plaintiff's claims. The Court finds that it would be difficult to parse out counsel's time on a claim-by-claim basis in light of the intertwined facts and claims. "[P]laintiff's counsel is required to explore every aspect of the case, develop all the evidence and present it to the court." Popham, 820 F.2d at 1579. As a result, "courts have expansively treated claims as being related," and this Court follows suit. Id.

### B. Lodestar Calculation

"A district court must articulate the reasoning behind its award or denial of attorney's fees in order to permit meaningful review." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC, 807 F.3d 1258, 1275 (11th Cir. 2015). In deciding a fee request, the Court is required to articulate the decisions it makes, give

principled reasons for these decisions, and show its calculation.  See Martinez v. Hernando Cty. Sheriff's Office, 579 F. App'x 710, 713 (11th Cir. 2014).  Where specific objections are made to the fees request, the Court may not rely on conclusory statements but must provide specific findings.  Am. Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428-29 (11th Cir. 1999).

"The first step in calculating a reasonable attorney's fee award is to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." Id.  The lodestar may then be adjusted after considering other factors, such as the results obtained.  Id.

### 1. Reasonable Hours

To meet its burden of showing that the hours for which fees are sought were "reasonably expended on the litigation," counsel must submit time records showing time expenditures with sufficient particularity so that the Court can assess the time claimed for each activity.  See Maner v. Linkan LLC, 602 F. App'x 489, 491 (11th Cir. 2015).  In assessing the hours, the Court "should exclude any excessive, redundant or otherwise unnecessary hours," and the Court has discretion to exclude work performed on unrelated actions.  Id. (quotation omitted).  To determine the number of hours reasonably expended in the litigation, the Court must exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary

irrespective of the skill, reputation or experience of counsel." <u>Martinez</u>, 579 F. App'x at 714.

As noted above, Plaintiff seeks fees for a total of 526.36 hours for work performed by seven attorneys and a paralegal.[4]  Defendant contends that Plaintiff's counsel failed to exercise billing judgment.  Counsel must exercise billing judgment, which means that they "must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours," which would be unreasonable to bill a client.  <u>Am. Civil Liberties Union of Georgia</u>, 168 F.3d at 428 (quotation omitted). If not, the Court must exercise billing judgment for counsel.  <u>Id.</u>  "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  <u>Id.</u>

Defendant begins with a general argument that Plaintiff's counsel spent excessive time on each phase of the lawsuit and then Defendant specifically goes through each phase and states that the time was unreasonable.  Defendant provides what its own counsel thinks is a reasonable amount of time for each phase of the suit.  Plaintiff responds that the time expended is reasonable.  Molden states in her

---

[4] As an initial matter, Defendant asserts that Plaintiff has failed to properly support his fee petition because Mr. Spanos' affidavit and Mr. Mack's affidavit were prepared for a different lawsuit.  Plaintiff acknowledged this fact in his Motion and submitted the affidavits in support of counsel's hourly rates only, not the hours billed.  Therefore, the Court has not considered their affidavits regarding whether the hours expended by Plaintiff's counsel in this lawsuit were reasonable.

affidavit that she exercised billing judgment in reviewing the fees and hours dedicated to each task, and she wrote off unnecessary and excessive hours, including the time her firm spent trying to locate Hart. Molden Decl. at ¶ 15.

The Court has reviewed the breakdown of time by phase of litigation as provided by Defendant and finds that time spent on each phase was reasonable given the claims in this case. For example, the Court agrees with Plaintiff that while the finished product in responding to a motion to dismiss may have been only so many pages, Defendant appears to overlook the time spent researching and preparing such a filing. Defendant also argues that Plaintiff's claims were not novel and there was well-developed law regarding these claims. But this overlooks the application of the particular facts of this case to that law, which certainly required time and research. The Court has thoroughly reviewed the objections raised by Defendant and the time spent on each phase of the lawsuit and forms its own independent judgment that the time spent was reasonable, including time spent on trial preparation, discovery, attorney meetings, emails, and briefing of various motions. See Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc., 572 F. App'x 796, 802 (11th Cir. 2014) ("The court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment

either with or without the aid of witnesses as to the reasonableness of the fee request.").

As for the time at trial, the trial lasted 2.5 days.  Molden was lead counsel, joined by, Robert Shapiro and Jessica Tian.  Shapiro and Tian were new attorneys and had only recently passed the bar.  Tr. at 3.  Shapiro and Tian each billed 8 hours on the first two days of trial and 4 hours on the last day.  Defendant asserts that Shapiro and Tian were brought into the case "apparently to provide them with experience in trial preparation" and that their "appearance [at trial] was purely for their benefit, with minimal impact on the litigation."  Def.'s Resp. to Pl.'s Mot. for Attys' Fees and Expenses at 19 [Doc. 86].  Defendant argues that the Court should not award fees for any of Shapiro's and Tian's time at trial.  Plaintiff responds that both Shapiro and Tian assisted Molden throughout the entire process of the trial, including making detailed notes during voir dire, assisting during cross and direct examinations, and brainstorming trial strategies.  The Court also recalls that Shapiro participated directly in the jury charge conference.  Upon review, the Court finds that the assistance of Shapiro and Tian was reasonable, especially compared to Molden trying the case alone or requiring the assistance of other more well-experienced counsel.  In particular, the Court notes that Defendant has offered no support for its position that these new associates were merely brought into the case to learn.  Certainly new associates must learn how to work a trial, but based on the

41

Court's own recollection of Shapiro's and Tian's participation along with the specific points raised by Plaintiff, the Court cannot conclude that these associates were merely standing idle and "learning." Therefore, the Court will allow the reasonable time billed by Shapiro and Tian during the trial.

Similarly, Defendant argues that attorneys Tremain Mattress and Elizabeth Brown had limited involvement in the case and that their participation was for their learning benefit. There is no support for this. The tasks and time billed by these attorneys are reasonable and will be allowed.

As for the instant fee petition, Defendant argues that the 28 hours Plaintiff seeks for the fee petition is unreasonable. Defendant asserts that the billing oversights, as objected to by Defendant, show that counsel actually dedicated very little time to the fee petition. Defendant also notes that Ms. Molden's affidavit contains numerous paragraphs that are identical to an affidavit she filed recently in another case before the undersigned. Upon review, the Court agrees with the points raised by Defendant and finds that 28 hours for the fee petition is unreasonable. Instead, the Court finds that 14 hours is reasonable. Only Molden and Shapiro worked on the fee petition, and therefore, the Court will reduce each of their hours spent on the fee petition by half.

Next, Defendant argues that certain time entries are inconsistent with the record. Defendant cites to 2.9 hours for activities on March 18 and 25, 2015,

pertaining to Plaintiff's counsel's email communications with defense counsel. Plaintiff explains that this time was reasonable and that his counsel broke down the time for each discrete task. Upon the Court's own review, all of the time from those two dates totals 2.17 hours, not 2.9 as stated by Defendant. The Court finds that this time for these tasks was reasonable.

Defendant asserts that 2 hours for the preparation of Initial Disclosures on February 17, 2015, should be excluded because Plaintiff filed his Initial Disclosures on February 3, 2015. The Court agrees and will subtract the 2 hours billed on this date by MacInnes.

Defendant contends that Plaintiff's paralegal's fees should be reduced to the extent that this time was spent on matters not traditionally performed by an attorney. "Fees for paralegal work are recoverable to the extent that the paralegal performs work traditionally done by an attorney." Gowen Oil Co. v. Abraham, 511 F. App'x 930, 936 (11th Cir. 2013) (quotation omitted). The Court has reviewed each of the specific entries by a paralegal and finds that the following tasks would not traditionally be performed by an attorney and should be excluded: send demand letter (1/9/14); confer with Plaintiff regarding payment options (1/23/14); prepare and bates stamp production of documents (3/19/15); bates stamp additional documents (3/31/15); bates stamp Plaintiff's documents (4/1/15); transfer emails to native format and begin researching ways to save emails (4/2/15); bates stamp

financial records of Plaintiff (4/22/15); bates stamp emails (4/24/15); and prepare and finalize documents for bates stamping (4/27/15).  These tasks amount to 15.7 hours for a paralegal, and the Court will exclude them.

Additionally, Defendant seeks to exclude the time spent by attorney MacInnes withdrawing from the case and a subsequent entry or appearance by Tyler Evans. The Court has reviewed these entries and finds that they are reasonable, particularly given the small amount of time billed and the importance of transitioning the case sufficiently from one attorney to another.

In sum, the Court finds that the hours submitted by Plaintiff's counsel are reasonable except for the following, which will be subtracted: 2.58 hours for tasks related to Hart; 14 hours for fee petition; 2 hours for Initial Disclosures; and 15.7 hours for paralegal tasks.

### 2. Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Martinez, 579 F. App'x at 713.  "The applicant bears the burden of producing satisfactory evidence that his requested rate is reasonable." Id.  "Testimony that a given fee is reasonable is unsatisfactory because satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." Id.  "'Satisfactory evidence at a minimum is more than the affidavit of the attorney

performing the work . . . [and] must speak to rates actually billed and paid in similar lawsuits.'" Eason v. Bridgewater & Assocs., Inc., 108 F. Supp. 3d 1358, 1364 (N.D. Ga. 2015) (quoting Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)).    Where appropriate, the Court may also consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Maner, 602 F. App'x at 493 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

Defendant challenges Molden's hourly rate of $400.00.  Based on a review of the case, all of the Johnson factors above (including the attorneys' experience and abilities, the time and labor required, and the amount involved and results obtained), the hourly rates in the Atlanta area,[5] and its own expertise, the Court finds that Molden's hourly rate of $400.00 is reasonable.  The Court also notes that it awarded Molden this hourly rate in Cheney v. Fulton County, Ga., No. 1:14-CV-02009-ELR,

---

[5] See 2015 Going Rate Index, Daily Report (Fulton County, GA), http://data.dailyreportonline.com/GoingRate.asp (last visited July 18, 2017). See also Martin v. Univ. of South Alabama, 911 F.2d 604, 610 (11th Cir. 1990) ("the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee").

Order [Doc. 107], a case she successfully litigated just a few months before this one.[6]

Defendant next challenges the hourly rate of $250.00 for attorney MacInnes. Defendant argues that this rate is too high for a first-year associate like MacInnes. Plaintiff responds that this rate is reasonable because, even though MacInnes was a younger lawyer at the time he worked on this case, he had extensive experience with employment matters, including sitting second chair at trials and arbitrations while at Molden's firm and handling the motions briefing in this case.  Plaintiff relies on Molden's and Mack's Declarations, which assert that the $250.00 hourly rate for MacInnes is reasonable.

The Court recognizes the time and labor involved in MacInnes' work, the results obtained by his motion briefing, his experience, and awards in similar cases. For example, in Pearson, this Court in 2011 awarded fees at the hourly rate of $180.00 for less experienced associates in Molden's firm.   No. 1:08-CV-3758-WCO, Order at 39 [Doc. 158].   In Cheney, the Court allowed an hourly rate of $180.00 for MacInnes. No. 1:14-CV-02009-ELR, Order [Doc. 107].  After a review of all of the evidence and in light of this Court's own judgment, the Court will allow an hourly rate of $180.00 for MacInnes here as well.  See Maner, 602 F. App'x at

---

[6] Several of the attorneys in Cheney also worked on this case.  Even though Spanos' and Mack's affidavits speak to the reasonable hourly rates of the attorneys in Cheney, the Court still finds these affidavits useful regarding the attorneys' hourly rates here, due to the undersigned's intimate familiarity with Cheney and the fact that Cheney was litigated during the same time frame as this case.

493-494 (reducing hourly rates for associates who were recent law school graduates from $250 and $225 an hour to $135 and $125 an hour).

Defendant maintains that a reasonable hourly rate for Brown and Mattress is $150.00 or less because Plaintiff has provided little information about these attorneys. Plaintiff has provided more details about these attorneys in its reply and points to Spanos' affidavit as showing that these rates are reasonable. The Court is also familiar with these attorneys and their backgrounds from <u>Cheney</u>. As in <u>Cheney</u>, the Court finds that $280.00 an hour is reasonable for these attorneys based on the Court's independent judgment and experience and after review of the <u>Johnson</u> factors. No. 1:14-CV-02009-ELR, Order [Doc. 107].

Next, Defendant argues that Shapiro and Tian, as new attorneys, should be billed at $50.00 or not at all. Based on the Court's independent judgment and experience and after review of the <u>Johnson</u> factors, the Court finds that $150.00 is a reasonable hourly rate for these attorneys.

As in <u>Cheney</u>, the Court will allow paralegal time at $100.00 an hour. No. 1:14-CV-02009-ELR, Order [Doc. 107]; <u>see also</u> 2015 Going Rate Index, Daily Report (Fulton County, GA), http://data.dailyreportonline.com/GoingRate.asp (last visited July 18, 2017).

### 3. Fee Summary

Plaintiff has requested $153,783.90 in attorneys' fees for a total of 526.36 hours. Plaintiff has provided a summary to the Court of this fee calculation, broken down by each attorney as follows:

| Name | Rate | Hours | Fees |
|---|---|---|---|
| Regina Molden | $400.00 | 215.60 | $ 86,240.00 |
| Tremain Mattress | $280.00 | 16.25 | $ 4,550.00 |
| Elizabeth Brown | $280.00 | 27.20 | $ 7,616.00 |
| Alexander MacInnes | $250.00 | 150.02 | $ 37,505.00 |
| Tyler Evans | $250.00 | 0.25 | $ 62.50 |
| Robert Shapiro | $180.00 | 54.83 | $ 9,869.40 |
| Jessica Tian | $180.00 | 21.50 | $ 3,870.00 |
| Paralegal | $100.00 | 40.71 | $ 4,071.00 |
| Totals | | **526.36** | **$ 153,783.90** |

Based on the Court's rulings above, the Court will allow fees as follows:

| Name | Rate | Hours | Fees |
|---|---|---|---|
| Regina Molden | $400.00 | 213.35 | $ 85,340.00 |
| Tremain Mattress | $280.00 | 16.25 | $ 4,550.00 |
| Elizabeth Brown | $280.00 | 27.20 | $ 7,616.00 |
| Alexander MacInnes | $180.00 | 145.44 | $ 26,179.20 |
| Tyler Evans | $250.00 | 0.25 | $ 62.50 |
| Robert Shapiro | $150.00 | 43.34 | $ 6,501.00 |
| Jessica Tian | $150.00 | 21.50 | $ 3,225.00 |
| Paralegal | $100.00 | 25.01 | $ 2,501.00 |
| Totals | | **492.34** | **$ 135,974.70** |

## C. Fee Enhancement

Plaintiff seeks a fee enhancement in this case. Plaintiff argues that the amount awarded by the jury was far more than the $150,000.00 Plaintiff had offered to settle the matter prior to trial. Plaintiff also asserts that this was a substantial and highly noteworthy success, particularly given Plaintiff's short employment tenure with Defendant and his suffering of only minimal damages.

"Once the lodestar is obtained, the court may then adjust it upwards or downwards." Moore ex rel. Moore v. Cook, No. 1:07-CV-631-TWT, 2012 WL 5362892, at *8 (N.D. Ga. Oct. 31, 2012) (citing Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); see also Jordan v. Guaranteed Auto, Inc., No. 1:13-CV-3703-WBH-JSA, 2015 WL 11251948, at *5 (N.D. Ga. Jan. 30, 2015), report and recommendation adopted, No. 1:13-CV-3703-WBH, 2015 WL 11255030 (N.D. Ga. Feb. 26, 2015) ("The Court may then enhance or reduce the lodestar amount if exceptional circumstances so require.").

> The Supreme Court and Eleventh Circuit have stated that while the adjustment may be based on a number of factors, the most important factor is the results obtained. Hensley, 461 U.S. at 434; Norman, 836 F.2d at 1302. The Supreme Court has warned, however, that upward adjustments are rarely warranted because the factors on which a prevailing party typically seeks an enhancement already have been considered by the court in determining the reasonable hourly rate[.]

Moore, 2012 WL 5362892, at *8. Here, while Plaintiff contends that the results obtained warrants an enhancement, the Court has already considered this factor in

calculating the lodestar amount.  See id.  After a full review of this case, the Court finds that any enhancement to the lodestar is unwarranted.

### D. Expenses

Plaintiff seeks $3,061.18 in expenses for printing and copies, mediation, courier delivery, trial binder supplies, and parking while at the courthouse during trial.  Costs other than attorneys' fees should be allowed to a prevailing party.  FED. R. CIV. P. 54(d).  "That provision establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise."  Chapman v. AI Transp., 229 F.3d 1012, 1038 (11th Cir. 2000).  Title 28 section "1920 defines costs which may be allowed to the prevailing party under Fed. R. Civ. P. 54(d)."  Parkes v. Hall, 906 F.2d 658, 659 (11th Cir. 1990).  As set forth in 28 U.S.C. § 1920, the costs that may be taxed against a non-prevailing party include:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Federal courts are bound by the limitations of § 1920 and may not tax costs that are not listed in that section without explicit statutory or contractual authorization. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987).

In support of costs, Plaintiff cites to several cases: Am. Civil Liberties Union of Georgia, 168 F.3d at 438; N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987); Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983). However, these cases allowed costs pursuant to 42 U.S.C. § 1988, which is broader than § 1920 and not at play here. Instead, costs for this FLSA and Title VII action are limited by § 1920. See Beal v. CSX Corp., 308 F. App'x 324, 327 (11th Cir. 2009); U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000); Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988); Burns v. City of Cape Coral, No. 2:10-CV-573-FTM-29, 2012 WL 5381944, at *1 (M.D. Fla. Nov. 1, 2012); Walker v. St. Joseph's/Candler Health Sys., Inc., No. 4:10-CV-216, 2012 WL 899209, at *1 (S.D. Ga. Mar. 15, 2012).

Defendant challenges the $927.46 in copying/printing costs because Plaintiff has not identified the number of pages or the per page rate. "[P]hotocopying expenses are taxable under § 1920(4), but only if the prevailing party shows that such copies were necessary." Araya v. Fulton-DeKalb Hosp. Auth., No. 1:08-CV-1732-TCB-AJB, 2009 WL 10664808, at *3 (N.D. Ga. May 6, 2009), report and recommendation adopted, No. 1:08-CV-1732-TCB-AJB, 2009 WL 10664774 (N.D.

Ga. May 26, 2009). "The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case." Helms v. Wal-Mart Stores, Inc., 808 F. Supp. 1568, 1570 (N.D. Ga. 1992), aff'd, 998 F.2d 1023 (11th Cir. 1993). "A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made." Id.

Plaintiff has provided a chart of expenses showing the fee/vendor, the purpose, the date, and the amount. Molden states in her affidavit states that the fees were necessary for litigating the case. Molden Decl. at ¶ 16. Plaintiff states in his Reply that by providing the information above, he has fulfilled his burden of proving the expenses are reasonable. However, on Plaintiff's chart, for "purpose," while Plaintiff has provided the nature of the documents copied, Plaintiff has not explained how the documents were used or intended to be used in the case. Therefore, the Court will not allow the costs for copying. See Outside the Box Innovations, LLC v. Travel Caddy, Inc., No. 1:05-CV-2482-ODE, 2009 WL 10670874, at *10 (N.D. Ga. Aug. 3, 2009) (photocopying costs disallowed where the documentation for costs indicated only the dates for photocopies but not the purpose of their intended use); Araya, 2009 WL 10664808, at *3 (photocopying expenses not awarded where no reason was offered by the expenses); Helms, 808 F.

Supp. at 1569 (the defendant did not explain the use of the copies and therefore costs were denied).

Next, Defendant challenges Plaintiff's expenses for trial binder and supplies, hand delivering documents to the courthouse, and parking expenses while at the courthouse. These expenses are not authorized by § 1920 and will not be allowed. See Gary Brown & Assocs., Inc. v. Ashdon, Inc., 268 F. App'x 837, 845 (11th Cir. 2008) (courier services); Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996) (postage, courthouse parking fees); Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002) (office supplies, postage, couriers, express mail); see also Luken v. Int'l Yacht Council Ltd., No. 02-60772-CIV-DIMITRO, 2009 WL 678005, at *1 (S.D. Fla. Mar. 11, 2009).  In addition, mediation expenses are not recoverable under § 1920.  Gary Brown & Assocs., Inc., 268 F. App'x at 845; Scelta, 203 F. Supp. 2d at 1339.  Once these nonrecoverable expenses are subtracted, no recoverable expenses remain.  Accordingly, the Court will not award any expenses to be paid to Plaintiff.

In sum, the Court grants in part and denies in part Plaintiff's Motion for Attorney Fees and Expenses and awards Plaintiff $135,974.70 in attorneys' fees.

**IV. Summary**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Attorney Fees and Expenses [Doc. 85]; **DENIES**

Defendant's Motion for Judgment as a Matter of Law [Doc. 87]; **DENIES** Defendant's Motion for New Trial [Doc. 88]; **GRANTS** Defendant's Motion to Supplement Motion for New Trial [Doc. 89]; and **GRANTS** Defendant's Motion for Leave to File Supplemental Response to Motion for Attorney's Fees [Doc. 93]. The Court **AWARDS** Plaintiff $135,974.70 in attorneys' fees and **DIRECTS** Defendant to pay Plaintiff's counsel a total of $135,974.70 in attorneys' fees within thirty (30) days from the date of entry of this order.

> **SO ORDERED**, this _25th_ day of July, 2017.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia